[Cite as *Golub v. Golub*, 2012-Ohio-2509.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97603

## SAMANTHA GOLUB, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## JOEL GOLUB, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 09 ADV 0150622

**BEFORE:** Sweeney, P.J., S. Gallagher, J., and Keough, J.
**RELEASED AND JOURNALIZED:** June 7, 2012

**ATTORNEY FOR APPELLANTS**

Kenneth J. Fisher, Esq.
Kenneth J. Fisher Co., L.P.A.
2100 Terminal Tower
50 Public Square
Cleveland, Ohio 44113-2204


**ATTORNEYS FOR APPELLEES**

Roger M. Synenberg, Esq.
Clare C. Christie, Esq.
Dominic J. Coletta, Esq.
Synenberg & Associates, L.L.C.
55 Public Square, Suite 1200
Cleveland, Ohio     44113

JAMES J. SWEENEY, P.J.:

**{¶1}** Plaintiffs-appellants Drew Golub and Samantha Golub (collectively "plaintiffs") appeal the court's granting summary judgment to defendants-appellees Joel Golub and Mark Golub (collectively "defendants") in this case contesting the will of Phoebe Golub ("decedent"), who was plaintiffs' grandmother and defendants' mother. After reviewing the facts of the case and pertinent law, we affirm.

**{¶2}** In November 2006, after her husband passed away, decedent revised her will to bequeath her estate equally between her three sons, Joel, Mark, and Robert Golub. On May 15, 2007, Robert died, survived by plaintiffs, who are his children Drew and Samantha. On May 18, an argument arose between Mark, his nephew Drew, and Drew's mother, who was estranged from the Golub family.

**{¶3}** Approximately three weeks later, on June 4, 2007, decedent drafted a new will through her attorney James Spitz, leaving one third of her estate to Mark, one third to Joel, and one third to plaintiffs. A copy of this will was sent to Mark and Joel, per decedent's instructions. However, this will was never signed.

**{¶4}** Approximately five weeks later, on July 10, 2007, Spitz received a call from decedent instructing him to draft another will, which left half of her estate to Mark and half to Joel. Plaintiffs were expressly disinherited in this will, which reads in pertinent part as follows: "I have intentionally left nothing to my grandchildren, DREW JORDAN

GOLUB and E. SAMANTHA JILLIAN GOLUB." Decedent executed this will on July 20, 2007, and a copy was sent to Mark and Joel, per decedent's instructions.

**{¶5}** On June 15, 2009, decedent died. Her will was probated, and on September 3, 2009, plaintiffs contested the will alleging that defendants unduly influenced decedent. On November 16, 2011, the court granted defendants' summary judgment motion, finding that plaintiffs' undue influence claim failed, because "[n]o evidence has been presented to support a finding that Decedent lacked testamentary capacity and was susceptible to undue influence by Defendants."

**{¶6}** Plaintiffs appeal and raise two assignments of error for our review. I. "The Cuyahoga County Court of Common Pleas, Probate Division, erred in granting Appellees' Motion for Summary Judgment as genuine issues of material fact are present."

**{¶7}** Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201 (1998), as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273-274.

**{¶8}** If the party moving for summary judgment satisfies this burden,

the nonmoving party has a reciprocal burden outlined in * * * Civ.R. 56(E), which provides that: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

*Dresher*, 75 Ohio St.3d at 293.

{¶9} Pursuant to Civ.R. 56(C), the only evidence that may be considered by a trial court ruling on a summary judgment motion is "the pleadings, depositions, answers to interrogatories, written admissions, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *."

{¶10} In *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962), the Ohio Supreme Court outlined the essential elements of undue influence as related to a contested will: 1)a susceptible testator; 2) another's opportunity to exert undue influence; 3) undue influence actually exerted or attempted; and 4) the resulting effect.

{¶11} In the instant case, the parties essentially concede that there is evidence in the record of the second and fourth elements of undue influence. However, plaintiffs assert that there are unresolved factual issues in the record regarding whether decedent was susceptible and whether defendants actually exerted or attempted to exert undue influence over her.

{¶12} In support of their contention that decedent was a susceptible testator, plaintiffs' argument is twofold. First, that decedent "never got over" the loss of her

husband and, less than a year later, the loss of her son. Second, that there was a "dramatic and significant change" in the July 2007 will.

{¶13} The record shows that, in general, decedent was a "vibrant" and "feisty" woman who was the matriarch of her family. Decedent suffered no physical or mental health issues in the summer of 2007 when she changed the beneficiaries of her will. Decedent's longtime housekeeper witnessed decedent's execution of the July 2007 will and described decedent's demeanor at the time as follows: "She looked good. * * * She looked like she knew what she was doing. She was aware. Of everything. She was her normal self. A little, she was a little — what would you call it — stressed out, but she was her normal self."

{¶14} According to Spitz, who prepared decedent's will, decedent was self-sufficient and did not need assistance. Asked to describe decedent's demeanor in June 2007, Spitz stated the following:

> * * * [S]he didn't appear to be any different than she was before. She was basically all business. She had her checklist of stuff she wanted to get through in our meeting. And I didn't notice anything out of the ordinary.

{¶15} Upon review, we find that evidence that decedent was in mourning is insufficient to create a factual issue regarding her susceptibility to undue influence in a testamentary capacity.

{¶16} Turning to the third element of undue influence, we review whether there is a factual dispute in the evidence concerning whether defendants improperly influenced

decedent to disinherit plaintiffs. In *West*, 173 Ohio St. at 501–502, the Ohio Supreme Court analyzed the nuances of actually exerting undue influence:

> General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.

> The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties.

> The fact that the testator * * * disposes of his property in an unnatural manner, unjustly, or unequally, and however much at variance with expressions by the testator concerning relatives or the natural objects of his bounty, does not invalidate the will, unless undue influence was actually exercised on the testator.

{¶17} Seven "facts" are brought to this court's attention by plaintiffs in the instant case: 1) defendants' daily phone conversations with decedent; 2) defendants' receipt of decedent's June 2007 draft and July 2007 will; 3) Spitz's lack of recollection as to decedent's reason for significantly revising her will; 4) the altercation between Mark, Drew, and Drew's mother as evidence of Mark's "ill will"; 5) Mark's testimony that he has been having financial difficulty since 2000; 6) Mark's testimony that he read portions of Joel's deposition transcripts in preparation for his own deposition; and 7) the inconceivability of defendants receiving copies of decedent's wills but not discussing with her that plaintiffs were being disinherited.

**{¶18}** Defendants' daily phone conversations with decedent are evidence of an opportunity to influence, rather than actual influence. Likewise, evidence that defendants received copies of the wills does not show that their influence "was operative" in procuring the wills.

**{¶19}** Contrary to plaintiffs' assertion, Spitz testified that decedent told him that she was disinheriting plaintiffs for the following reason: "[S]he indicated to me her displeasure with her grandchildren, and that she didn't want them to get anything because she had previously given a lot of funds to their father and didn't want to compound the unequal distribution by giving them additional monies."

**{¶20}** Mark's testimony of ill will and financial difficulty merely shows the opportunity or motive to exert influence over decedent. Furthermore, evidence that Mark prepared for his deposition in 2011 has no bearing on whether he improperly influenced decedent to change her will in 2007.

**{¶21}** Plaintiffs' final argument — whether defendants discussed with decedent plaintiffs' disinheritance — goes to the heart of the allegation that defendants actually exerted undue influence over decedent. We review this evidence to determine if there is a factual issue for trial.

**{¶22}** Mark testified that he "pretty much never discussed finances or things like that" with decedent. "[She]never questioned it, [she] never offered it. It was just something we never did." According to Mark, he did not read the draft or will in question that was mailed to him until he became involved in this litigation.

{¶23} Joel testified that he did not know what circumstances changed between June and July 2007 as far as decedent and her will were concerned. Additionally, Joel testified that he did not discuss the will in question with decedent other than her informing him that "she was not leaving anything for the grandchildren." According to Joel, he never spoke with Spitz until after decedent's death, and he did not read decedent's will despite being mailed a copy.

{¶24} Spitz testified that neither defendant was ever present when he met with decedent and that he had "no conversations with them at all" regarding decedent's wills.

{¶25} According to decedent's housekeeper, decedent

didn't want [plaintiffs' mother] to have a penny of her money. Not a penny. She didn't even want [plaintiffs' mother] to step foot on her premises. She had her locks changed. Yes, she did. * * * She didn't want [plaintiffs' mother] to have no money. Now, that's why the grandkids here was taken out the will. Because I guess she felt that if the grandkids get the money, [plaintiffs' mother] will get ahold of it. But it wasn't her intentions, you know, she didn't want — she wanted them to have it. But she was blocking [plaintiffs' mother].

{¶26} Drew testified that he did not have any "firsthand information or evidence or knowledge" that defendants influenced decedent to disinherit plaintiffs. Asked why he should be a beneficiary under the will, Drew replied because "[i]t would be fair."

{¶27} Similarly, Samantha testified that she had no evidence to support the allegation that defendants applied undue influence on decedent. Asked to explain, Samantha testified that "I only know that our — my relationship with my grandmother did not change at all, so that did not reflect her will, in my opinion." Samantha "assumed" defendants coerced decedent to change her will.

**{¶28}** Upon review, we find no factual issues for trial concerning plaintiffs' claim of undue influence. Although the opportunity was arguably there, plaintiffs failed to produce evidence that defendants improperly influenced decedent.

> [T]he testator * * * has the sole right, if of sound mind and under no undue restraint, to dispose of [his or her property] in any way he [or she] sees fit, provided such disposition is not repugnant to law; and * * * neither the court nor the beneficiaries in a will can amend or change the will simply because they might think another disposition more desirable, equitable or just.

*Feiler v. Feiler*, 149 Ohio St. 17, 24, 77 N.E.2d 237 (1948).

**{¶29}** Accordingly, plaintiffs' first assignment of error is overruled.

**{¶30}** In plaintiffs' second assignment of error, they argue as follows:

**{¶31}** II. "The Cuyahoga County Court of Common Pleas, Probate Division, erred in granting Appellees' Motion for Summary Judgment by applying the incorrect undue influence legal standard."

**{¶32}** Specifically, plaintiffs argue that the court applied the incorrect standard by determining that they failed to present evidence that decedent lacked testamentary capacity, in addition to determining that they failed to present evidence that she was a susceptible testator. As indicated, the correct standard concerns whether decedent was a susceptible testator. Adding an unnecessary element to its analysis does not render the court's proper analysis deficient, and plaintiffs point to no legal authority to show otherwise. Therefore, we find as a matter of law that the court applied the correct standard.

**{¶33}** Although not raised at the trial court level, plaintiffs also argue on appeal that there was a question for the trier of fact as to whether there was a confidential relationship between defendants and decedent, giving rise to a presumption of undue influence. "A confidential relationship exists whenever trust and confidence are placed in the integrity and fidelity of another." *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 39.

**{¶34}** Plaintiffs allege that a confidential relationship could be inferred from the following facts: Defendants received copies of the drafts of decedent's will, and defendants and decedent spoke on the phone on a daily basis. However, under Ohio case law, these facts do not give rise to an inference of a confidential relationship. *Compare Guardianship of Blumetti*, 2d Dist. No. 92-T-4752 (Jan. 14, 1994) (holding that a confidential and "fiduciary" relationship arose between mother and daughter when daughter was mother's attorney-in-fact, assisted mother in paying her bills and writing checks, and established "gifts" to the family).

**{¶35}** While decedent and defendants are obviously family members, nothing in the record suggests a fiduciary relationship between decedent and her sons. Decedent spoke on the phone everyday with Joel, who resides in Cincinnati, and Mark, who lives in Phoenix, AZ. Decedent was in charge of her own finances until her death. According to Joel, he and decedent never "discussed" her will, other than her informing him of any changes after the fact. Therefore, we find that no confidential relationship existed between decedent and defendants.

**{¶36}** Accordingly, the court did not err in granting defendants' summary judgment motion, and plaintiffs' second assignment of error is overruled.

**{¶37}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR