[Cite as *Spisak v. Salvation Army*, 2013-Ohio-5429.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99633

# BARBARA SPISAK

PLAINTIFF-APPELLANT

vs.

# THE SALVATION ARMY, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-773807

BEFORE: Boyle, J., Stewart, A.J., and McCormack, J.

RELEASED AND JOURNALIZED: December 12, 2013

**ATTORNEYS FOR APPELLANT**

Christopher P. Thorman
J. Matthew Linehan
Daniel P. Petrov
Thorman Petrov Griffin Co., L.P.A.
3100 Terminal Tower
50 Public Square
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEES**

Joseph K. Oldham
Cara Galeano-Legarri
Oldham Kramer
195 South Main Street
Suite 400
Akron, Ohio    44308

MARY J. BOYLE, J.:

**{¶1}** In this employment-discrimination action, plaintiff-appellant, Barbara Spisak, appeals the trial court's decisions denying her motion for a new trial and motion for judgment notwithstanding the verdict, after the jury returned a verdict in favor of defendant-appellee, The Salvation Army. She raises the following three assignments of error:

> [I.] The trial court erred in denying Spisak a new trial, as the law and weight of the evidence established that The Salvation Army unlawfully discriminated on the basis of age.
>
> [II.] The trial court erred in denying Spisak a new trial pursuant to Civil Rule 59(A) due to procedural irregularities that unfairly prejudiced Spisak.
>
> [III.] The trial court erred in denying Spisak's motion for judgment as a matter of law, as the jury's verdict was contrary to the admitted and unrefuted evidence of discrimination.

**{¶2}** Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶3}** In 1984, The Salvation Army hired Spisak as daycare director at its Hough Community Center ("Center"). Spisak was ultimately promoted to the position of director of youth services in 2005, which involved overseeing both the daycare and the learning center (also referred to as "learning zone"). At that time, Spisak reported to Douglas McGuire, the administrator of the Center, who had recommended Spisak for the promotion. Spisak was 54 years old at the time.

{¶4} In December 2010, due to low enrollment numbers, The Salvation Army was forced to close its daycare but continued in the operation of the learning center. As part of the closing of the daycare, The Salvation Army eliminated all the positions held at the daycare, including the position held by Spisak. The Salvation Army created a new position, director of education, a position that paid approximately $17,000 less than Spisak's former position.[1]

{¶5} After the daycare closed, Spisak continued to oversee the learning zone during the transitional period. She was also advised to apply for the new position, which she ultimately did not receive. The Salvation Army gave the position to Brian Pfeifer, a 35-year-old nondisabled male. Spisak was officially terminated from The Salvation Army in April 2011, after over 26 years of service. She was 60 years old at the time.

{¶6} In January 2012, Spisak commenced the underlying action against The Salvation Army and Douglas McGuire, asserting claims for (1) age discrimination, (2) disability discrimination, and (3) retaliation. Prior to trial, Spisak dismissed her claims against McGuire, and the remaining claims proceeded to be heard before a jury.

{¶7} At trial, Spisak's theory was that The Salvation Army discriminated and retaliated against her when they terminated her employment and refused to retain or hire her for the position that they gave to Brian Pfeifer. Spisak testified that she was being removed from her position because of her age. According to Spisak, prior to November

---

[1] Spisak was earning $52,000 at the time of her termination.

2010, she had "no clue" that she would be losing her job because she consistently "had good reviews" and received regular raises. Spisak further testified that, after learning the daycare would be closing, McGuire informed Spisak that she may still get her job back by applying for the new director of education position, but that her education and experience "would be a hindrance to [her]." Spisak explained that this was McGuire's way of saying her "age." Spisak also testified that McGuire had made other age-related remarks in the workplace about other older employees that she previously complained to him about.

{¶8} At trial, Spisak introduced evidence that the metadata contained in her April 2011 termination letter revealed that the termination letter was titled "December 3, 2010" — the same day that Spisak first complained of age discrimination to McGuire in an email.

{¶9} Spisak further stated that, according to an announcement at an officers' meeting, The Salvation Army was seeking younger people and youth in their administration positions in the force. Spisak specifically identified Major Diana Capanna, the commanding officer of the Center, and Officer Emmett Jones, as individuals within The Salvation Army that had made comments about age playing a factor in her employment. Spisak adduced evidence at trial that Capanna identified "youth" as a factor to be considered in making some placement decisions.

{¶10} Spisak further testified that she interviewed for the new position after it was posted. She dressed professionally for the interview and "did [her] best during the

interview." Spisak acknowledged, however, that she was angry that she had to interview for the job. According to Spisak, she was qualified for the job because it involved "most of the same stuff that [she] was doing for the last 26 years."

{¶11} Upon learning that she did not get the position, Spisak formally complained about discrimination to Anita Bennett, The Salvation Army's human resources director for northeast Ohio. Two weeks later, Bennett responded, stating that "neither age or disability had any bearing whatsoever on the selection process." Bennett further indicated that

> [t]he new position requires a focus on marketing and public relations, along [with] creativity to build new programs, such as pre-school tutoring as well as adult basic education. This skill set and experience is needed to accomplish the goal of bringing the Learning Center enrollment to a desirable and increased level by getting information out to the community using in-person appointments, press, social media, etc.

{¶12} Sherry Burgin, the former preschool coordinator at the Center, corroborated Spisak's testimony as to Spisak dressing professionally for the interview. She further testified that (1) age definitely played a role in Spisak not being selected; (2) McGuire made age-based comments regarding two older employees, and (3) The Salvation Army seemed to be moving toward "out with the old and in with the new" approach.

{¶13} According to Spisak's theory at trial, The Salvation Army had no real intention of considering her as an applicant for the newly created position, and her alleged poor performance in the interview was an excuse to justify the termination of her employment. Spisak further introduced evidence that the Center's declining enrollment was due largely to the economy.

{¶14} Conversely, The Salvation Army's defense at trial was that it did not discriminate or retaliate against Spisak. According to The Salvation Army's witnesses, it eliminated Spisak's position as a part of its reorganization, which was necessary due to the low enrollment threatening the vitality of the overall Center. Specifically, McGuire testified that Spisak's "termination was done as part of reorganization where her position was eliminated." The Salvation Army witnesses, including McGuire, Capanna, and Bennett, all testified that Spisak was not discriminated against because of her age. In fact, many of The Salvation Army's witnesses expressed their genuine affection and appreciation for Spisak. It was undisputed that Spisak dedicated her life to the Center. McGuire testified, however, that he could not risk any further decline in enrollment and that Spisak had failed to meet the objective for increasing enrollment. Under Spisak's leadership, the enrollment in the daycare declined from 40 to 12 during the period of 2008 through 2010. Capanna likewise testified that The Salvation Army does not discriminate against employees based on their age and that the mission of the organization specifically prohibits such a practice.

{¶15} With respect to her interview, The Salvation Army presented evidence that Spisak did not dress professionally, displayed a "defeated" attitude, answering questions with grunts and remarks such as, "you know me." McGuire specifically testified that he was hoping that Spisak would come to the interview with fresh ideas, especially since she was at a disadvantage resulting from her "proven poor results" in the area of

promoting the program. According to McGuire, Spisak was not the best candidate to meet The Salvation Army's expectation for enrollment and recruitment.

{¶16} Jeanette Kirk, divisional director of learning zones and a panel member during the interview process of hiring the director of education, corroborated McGuire's testimony concerning Spisak's performance during the interview. Kirk testified that "everyone was given a fair shot" during the interview and that there was no discussion to hire someone young for the position. Kirk further testified that she had visited Spisak's program in early 2010 and found that the "program was in disarray." Kirk further testified that her response to Spisak's November 23, 2010 email, wherein she reassured Spisak that the closure of the daycare was not her fault, was motivated by her concern that Spisak "may have harmed herself." Although Kirk believed the program "was in disarray and decline" under Spisak's leadership, she "didn't want to send [Spisak] over the edge."

{¶17} Regarding Spisak's termination letter containing metadata with the title "December 3, 2010," McGuire testified that he used the same letter for everyone being terminated and simply did a "save as" each time.

{¶18} After a five-day trial, the jury returned a nonunanimous (7-1) verdict in favor of The Salvation Army. Spisak subsequently filed a motion for judgment as a matter of law, or alternatively, a new trial, under Civ.R. 50 and 59. The trial court denied the motion and issued an opinion, stating the following:

> While adroit cross-examination by plaintiff's counsel did adduce testimony which could support her position, there was also testimony that

the defendant's decision to hire someone other than the plaintiff was based upon the new person's qualifications and plaintiff's sub-par performance in one aspect of the new job. In short there were competing theories supportable by the evidence. Thus, the trial testimony, taken as a whole, presented questions of fact for a jury's determination.

{¶19} From that decision, Spisak now appeals.

Standard of Review

{¶20} The decision whether to grant a new trial under Civ.R. 59(A)(6) — the weight of the evidence — rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus. As always, an abuse of discretion implies that the court's attitude was "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶21} This deferential standard of review requires this court to view the evidence favorably to the trial court's action rather than the jury's verdict. Indeed, "[i]t is not the place of this court to weigh the evidence in these cases." *Mannion v. Sandel*, 91 Ohio St.3d 318, 322, 744 N.E.2d 759 (2001). Further, a reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of

the case.  *C.E. Morris Co.  v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

Manifest Weight of the Evidence

**{¶22}** In her first assignment of error, Spisak argues that the trial court abused its discretion in denying her motion for a new trial because "the clear weight of the evidence fails to support the verdict of no liability" and "is contrary to the law of Ohio." We disagree.

**{¶23}** Under Civ.R. 59(A)(6), a trial court may grant a new trial when a judgment is not supported by the weight of the evidence.   In granting a new trial for this reason, a trial court must weigh the evidence and pass upon the credibility of the witnesses,

> not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence.

*Rohde*, 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph three of the syllabus.  As stated above, the trial court may not set aside the jury's verdict under Civ.R. 59(A)(6) due to a "mere difference of opinion."  *Id.* at 92.  "[R]ather, the relief should be granted only when the trial court is persuaded that there is insufficient credible evidence to sustain the verdict in light of the other evidence presented."  *Green v. Bailey*, 1st Dist. Hamilton No. C-070221, 2008-Ohio-3569, ¶ 13.

**{¶24}** Initially, we note that Spisak's manifest weight of the evidence argument attacks the jury's verdict with respect to her age-discrimination claim — not her disability or retaliation claims.   Under Ohio law, it is unlawful for an employer to

discharge or lay off or otherwise discriminate against an employee because of that employee's age, when the employee is at least 40 years of age. To prove her age-discrimination claim, Spisak had to prove by a greater weight of the evidence that age was a determining factor in The Salvation Army's decision not to retain her or rehire her. *See Thomas v. Columbia Sussex Corp.*, 10th Dist. Franklin No. 10AP-93, 2011-Ohio-17, ¶ 26-31, citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2342, 174 L.Ed.2d 119 (2009). If the jury found that Spisak had proven by a greater weight of the evidence that her age was a determining factor in The Salvation Army's decisions, then the jury was required to find in favor of Spisak on her age-discrimination claim.

{¶25} Spisak argues that a new trial is warranted because The Salvation Army admitted that Spisak's age made a difference in its employment decisions. Specifically, Spisak points to excerpts of the testimony of Major Diana Capanna, The Salvation Army's commanding officer and corporate representative, for the proposition that The Salvation Army has identified "youth" as a factor to be considered in making placement decisions for some positions. But Spisak fails to accurately characterize Capanna's entire testimony.

{¶26} The record reveals that Capanna answered as follows in response to Spisak's attorney's questioning:

> Q. Sure, I asked, I said for everything you just described, for those jobs and those callings and that service you provide, your divisional commander and your ranking officers have identified youth as a factor to be considered in making placement decisions, correct?

A.     In some positions, yeah, you have to have youth.

Q.     In those leadership positions, correct?

A.     Uh-huh.

{¶27} While Capanna responded affirmatively to Spisak's attorney's question, it appears from the preceding and subsequent responses that Capanna was specifically referring to the *officer* positions, which are uniquely different than the *employee* positions. As explained at trial, officers of The Salvation Army are not lay persons; they are analogous to priests in the Catholic church. The officers dedicate their lives to a calling of service, and they may have to move frequently to serve areas in need. This is not the same for employees. The Salvation Army's desire to place younger members in officer positions coincides with their goal to ensure the vitality of the organization. And with respect to employees, Capanna expressly denied that "it's a good thing to consider age in determining which employees are right for certain jobs." Although Spisak's attorney skillfully attempted to elicit testimony from Capanna to establish otherwise, Capanna testified as follows: "You're twisting everything for me. You want me to say correct, and you don't give me a chance to explain. * * * You don't put people according to their age and position, you put them according to their abilities."

{¶28} Capanna further testified on direct that she has never heard anyone at The Salvation Army say that they were looking to hire younger employees. With respect to Spisak specifically, Capanna testified that Spisak is "a great lady"; however, despite Spisak's claims, The Salvation Army did not discriminate against her.

**{¶29}** Further, contrary to Spisak's assertion on appeal, she did not conclusively establish that The Salvation Army's stated reasons for her termination were false. The record reveals that McGuire testified that the need to reorganize and eliminate Spisak's position was due to low enrollment. The other witnesses from The Salvation Army, namely, Jason White, Capanna, Kirk, and Bennett, all acknowledged that the declining enrollment in the daycare program was a critical issue for the Center. Further, Brian Pfeifer testified that the push to increase enrollment was conveyed at the time of his interview.

**{¶30}** Notably, The Salvation Army's concern with enrollment under Spisak's leadership was first specifically noted in her performance evaluation for the period of November 2007 through November 2008, as follows: "Enrollment has been on a steady decline. Reversing the trend needs to be the top priority. At least 20% of your attention needs to be addressing this issue." Then Spisak's next review, for the period of November 2008 through November 2009, indicated that Spisak's "[o]verall performance had declined" and that "[a] continued decline in the enrollment of your program will dictate administrative structural changes."

**{¶31}** Moreover, Spisak's own admissions in email correspondence evidenced her understanding that getting enrollment up was a key concern of The Salvation Army and an expectation that she failed to meet. For example, Spisak acknowledged in an email correspondence to Kirk dated November 23, 2010 — that "filling" the daycare through "marketing" fell within her job responsibilities and that she blamed herself for "everyone

losing their jobs." Similarly, in the same correspondence sent to McGuire complaining about age discrimination, Spisak acknowledged that "my responsibility to fill the daycare for the last couple of years did not go unnoticed. I am well aware that I destroyed everyone's livelihood, I take full responsibility and despise myself for my incompetence."

{¶32} And while The Salvation Army's counsel made a misstatement in opening argument regarding the number of children enrolled in the learning center at the time of Spisak's termination, the misstatement was made known to the jury and clarified on several occasions.

{¶33} Applying the deferential standard of review that governs a motion for a new trial under Civ.R. 59(A)(6), we cannot say that the trial court abused its discretion in denying Spisak's motion for a new trial. The jury was presented with two competing theories and ultimately concluded that The Salvation Army did not discriminate against Spisak because of her age. Because competent, credible evidence exists supporting the jury's verdict, we find that the trial court properly denied Spisak's motion for a new trial under Civ.R. 59(A)(6).

{¶34} We likewise find that the trial court did not err in denying Spisak's motion for a new trial under Civ.R. 59(A)(7). *See Rohde*, 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph two of the syllabus. The mere fact that the jury found The Salvation Army's evidence more compelling does not render the verdict contrary to law.

{¶35} The first assignment of error is overruled.

**{¶36}** In her second assignment of error, Spisak argues that the trial court erred in failing to grant her a new trial in accordance with Civ.R. 59(A)(1) because of several procedural irregularities that occurred, preventing her from having a fair trial.

**{¶37}** Civ.R. 59(A)(1) provides a trial court with discretion to grant a new trial when there is an "irregularity" in the proceedings that prevents a party from having a fair trial. "The rule preserves the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings." *Wright v. Suzuki Motor Corp*., 4th Dist. Meigs Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, ¶ 114. We afford great deference to the trial court's decision denying or granting a motion for a new trial pursuant to Civ.R. 59(A)(1) and will not reverse the decision absent a showing that the court abused its discretion. *Koch v. Rist*, 89 Ohio St.3d 250, 251, 730 N.E.2d 963 (2000). Again, an abuse of discretion connotes an attitude by the court that is unreasonable, arbitrary, or unconscionable. *Id.*

**{¶38}** Applying this deferential standard of review, we find none of the alleged irregularities, either individually or collectively, warrant a new trial.

   A.    *Salvation Army's Failure to Follow Evidentiary Ruling Regarding Enrollment Under Pfeifer's Leadership*

**{¶39}** Spisak argues that The Salvation Army's attorneys repeatedly elicited testimony that Pfeifer increased the enrollment numbers at the learning center despite the trial court properly granting Spisak's pretrial motion in limine to exclude any mention of

Pfeifer's performance and the enrollment count under his leadership. Spisak further contends that testimony and remarks offered by The Salvation Army and its counsel regarding enrollment were false and that the trial court committed plain error in denying her request for a curative instruction to address The Salvation Army's misconduct.

{¶40} Spisak complains of four specific instances involving testimony and remarks related to Pfeifer's performance and higher enrollment under his leadership: (1) a comment by The Salvation Army's attorney during opening argument, (2) a response elicited by Spisak in questioning McGuire on cross-examination, (3) a response elicited by The Salvation Army in questioning McGuire on redirect, and (4) a comment made by The Salvation Army's counsel during closing argument.

{¶41} The record reveals, however, that the trial judge sustained Spisak's objections with respect to the testimony elicited on the witness stand and specifically emphasized that "we don't care what Mr. Pfeifer has done" when the testimony was first elicited. The trial court further explained the significance of sustaining an objection in its final charge to the jury, namely, that the jury must disregard testimony being offered or blurted out when the trial court sustains an objection.

{¶42} As for the comments made in opening and closing statements, the trial judge instructed the jury, both prior to opening statements and again in the final charge, that the statements were not evidence. The trial court emphasized that the jury's impression of the evidence is what counts — not the attorneys' impression as stated in their opening and closing arguments.

**{¶43}** Based on the record before us, we cannot say that the trial judge abused its discretion in denying Spisak's motion for a new trial. While we agree that evidence of Pfeifer's performance and the enrollment count under his leadership was irrelevant to whether The Salvation Army had a discriminatory intent in terminating Spisak's employment, we do not find that the referenced excerpts deprived Spisak of a fair trial. Even without a specific curative instruction to disregard the evidence, this evidence was not so prejudicial that it leaves doubt in our mind that the jury would have made the same decision in the absence of the comments. Instead, we find that the jury would have reached the same decision even in the absence of these remarks.

**{¶44}** For this same reason, we find the Ohio Supreme Court's decision in *Drake v. Caterpillar Tractor Co.,* 15 Ohio St.3d 346, 474 N.E.2d 291 (1984), not controlling in this case. In *Drake* — a design defect case involving a tractor — the trial court made abundantly clear that evidence of the tractor's safety history was not admissible to establish the absence of a design defect. *Id.* at 348. Nevertheless, during the closing argument, the defendant's counsel referred to the tractor's safety history as if it had some impact on whether the tractor was defectively designed. *Id.* The Supreme Court agreed with the court of appeals that the improper comments made during closing argument went to the central issue in the case and therefore warranted a new trial. *Id.* Here, the testimony concerning Pfeifer's improvement in enrollment does not go to the central issue in this age discrimination case. Nor does it have the same prejudicial effect of the evidence at issue in *Drake*.

*B.      Exclusion of Letter by Counsel*

**{¶45}** Spisak agues that the trial court's decision to exclude The Salvation Army's written position statement to the EEOC was error that prejudiced her at trial.  The evidence at issue is a letter written by The Salvation Army's counsel to the EEOC in response to allegations of The Salvation Army discriminating against Spisak.  In the letter, counsel indicates that The Salvation Army's selection of Brian Pfeifer "had nothing to do with any type of discrimination against Barbara Spisak."  The letter further indicates that Spisak's "attitude during this transitional phase for the Hough Center was very poor and this came through in her interview for the new position of Learning Zone Director."

**{¶46}** Spisak argues that the admission of the letter was critical because it evidenced that The Salvation Army's stated reasons for terminating her were false and therefore post-hoc pretext of discrimination.  Spisak sought to introduce the letter during her cross-examination of McGuire as a prior inconsistent statement by a defendant after McGuire denied that Spisak was terminated because of her attitude during a transitional period and a job interview.  Instead, McGuire testified that Spisak's "termination was done as part of reorganization where her position was eliminated."

**{¶47}** The trial court prohibited Spisak from introducing the letter in her cross-examination of McGuire because the letter was written by The Salvation Army's attorney on his own letterhead — not the Salvation Army's letterhead.  The Salvation Army's counsel successfully argued that the letter constituted a statement of counsel and

not McGuire's or The Salvation Army's. Counsel argued that he drafted the letter, intentionally keeping it "brief" without putting "everything in there."

{¶48} Even if we agreed that the trial court should have admitted the letter, we find that its exclusion constitutes harmless error. The reason cited in the letter was introduced at trial as a factor contributing to The Salvation Army's decision in not hiring Spisak for the new position. Although McGuire stated that Spisak's termination was done as part of reorganization when her position was eliminated, he also testified that her attitude and performance in the interview were contributing factors in her not getting the new position. Notably, the letter identifies the decline of the number of students at the Center as a driving force in the reorganization of the Center, which required the elimination of a number of positions, including Spisak's. The letter is therefore consistent with McGuire's testimony. Moreover, we note that Spisak had five days of trial to question witnesses about allegations of pretext and inconsistent statements. We cannot say that the exclusion of the letter written by The Salvation Army's counsel deprived Spisak of a fair trial.

### C. Jury Instruction that "Overqualified" May Be Pretext for Age Discrimination

{¶49} Spisak argues that the trial court's refusal to give proposed jury instruction No. 17 constitutes reversible error. The instruction stated the following:

> In determining whether Defendants discriminated on the basis of age, you may but are not required to consider whether Defendants refused to hire older employees on the basis that they were "overqualified" or had "too much experience."

> Denying employment to an older job applicant because she has too much experience, training or education may be considered an [sic] euphemism to make the true reason for refusal, namely, in the eyes of the employer the applicant is too old. Consequently, you may but are not required to infer that if Defendants refused to hire older applicants because they were "overqualified" or had "too much experience," then Defendants' stated reason is mere pretext for age discrimination.

{¶50} According to Spisak, McGuire expressly testified at trial that he excluded job candidates who had more than 25 years of experience and were "overqualified."

Spisak maintains that the absence of the above instruction "meant that the jury did not have the opportunity to consider McGuire's discriminatory exclusion of older workers as 'overqualified' as evidence of age bias" in evaluating her claims.

**{¶51}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, ¶ 12.

**{¶52}** The trial court found the requested instruction to be duplicative and unnecessary, stating that "it sounds too much like a repetition of what you're going to be arguing." We find no abuse of discretion. The record reveals that the trial court's instructions, taken in their entirety, fairly and correctly state the law applicable to the evidence presented at trial. Indeed, the trial judge specifically addressed ageist stereotypes as part of the jury instructions. Moreover, there was no evidence that The Salvation Army refused to hire Spisak for the new position based on her being overqualified. Although McGuire admitted that he did not call certain applicants for an interview that he believed to be "overqualified" for the position at hand, the same did not hold true for Spisak, who was selected and interviewed for the position.

D.     *Age of Other Salvation Army Employees*

**{¶53}** Spisak next complains that the trial court abused its discretion in allowing The Salvation Army to introduce evidence that approximately 30 percent of the

workforce in the divisional headquarters was over the age of 60. Spisak argues that the testimony of Anita Bennett as to this percentage should have been excluded because there was no expert testimony offered to provide any foundation, explanation, or meaning for the percentage. We find, however, that the trial court properly allowed The Salvation Army to offer this testimony after Spisak opened the door to this evidence.

{¶54} Spisak argued at trial that The Salvation Army had an organizational policy of discriminating against employees based on their age. She further emphasized the ages of those employees whose positions were eliminated as part of the reorganization. Because Spisak first sought to introduce the ages of other Salvation Army employees who were eliminated as part of the reorganization to support her claim of an institutional policy of age discrimination, we cannot say that the trial court abused its discretion in allowing Bennett to testify as to her understanding of the percentage of employees over the age of 60 at the divisional headquarters. We further note that Spisak had a full opportunity to cross-examine Bennett as to her calculation and attack the reliability of her calculation. In fact, Spisak's counsel did exactly that upon cross-examining Bennett. We therefore fail to see how Spisak was prejudiced by the introduction of this evidence. Nor can we say that the evidence denied her a fair trial.

{¶55} Based on the record before us, Spisak's trial may not have been perfect, but it was fair, and that is only what the law requires. *See Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio- 6324, 900 N.E.2d 153, ¶ 30 (litigants are not entitled to a perfect

trial, only a fair one). Accordingly, we find that the trial court did not abuse its discretion in denying Spisak's motion for a new trial on alleged procedural irregularities.

**{¶56}** The second assignment of error is overruled.

<u>Judgment Notwithstanding the Verdict</u>

**{¶57}** In her third assignment of error, Spisak argues that the trial court erred in denying her motion for judgment notwithstanding the verdict and not granting her judgment as a matter of law under Civ.R. 50(B).

**{¶58}** Our review of the grant or denial of a motion for judgment notwithstanding the verdict is de novo. *O'Connor v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 98721, 2013-Ohio-1794, ¶ 45, citing *Grau v. Kleinschmidt*, 31 Ohio St.3d 84, 90, 509 N.E.2d 399 (1987).

**{¶59}** In deciding a motion for judgment notwithstanding the verdict, the trial court must construe the evidence most strongly in favor of the nonmoving party. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 137, 477 N.E.2d 1145 (1985). Thus, the trial court must submit an issue to the jury if there is evidence that, if believed, would permit reasonable minds to come to different conclusions. *TLT-Babcock, Inc. v. Serv. Bolt & Nut Co.*, 16 Ohio App.3d 142, 143, 474 N.E.2d 1223 (9th Dist.1984).

**{¶60}** Spisak argues that a reasonable factfinder could come to only one conclusion in this case — age was a determining factor in The Salvation Army's decision to terminate Spisak's position and replace her with Brian Pfeifer. She contends that the evidence unequivocally establishes that The Salvation Army "maintained and

promoted an age-based policy of placing young employees into jobs" and that The Salvation Army openly admitted to terminating Spisak pursuant to this policy, thereby entitling her to judgment as a matter of law. We disagree.

{¶61} As previously discussed in the resolution of the first assignment of error, The Salvation Army put forth sufficient evidence to support its side of this case; therefore, it was not error for the court to deny Spisak's motion. *McKenney v. Hillside Dairy Co.*, 109 Ohio App.3d 164, 176, 671 N.E.2d 1291 (8th Dist.1996) (holding that a "motion for a judgment notwithstanding the verdict pursuant to Civ.R. 50(B) tests the legal sufficiency of the evidence"). Reasonable minds could reach differing conclusions as to the issue of age discrimination. Here, the jury was free to believe that The Salvation Army did not discriminate against Spisak and that her position was eliminated as part of the closure of the daycare program. As for The Salvation Army's failure to hire Spisak in the new position, the jury again was free to believe The Salvation Army witnesses that Spisak interviewed poorly for the position and failed to appreciate the enrollment issue. We cannot say that Spisak was entitled to judgment as a matter of law when construing the evidence most strongly in favor of The Salvation Army.

{¶62} The third assignment of error is overruled.

{¶63} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MELODY J. STEWART, A.J., and
TIM McCORMACK, J., CONCUR