[Cite as *Ryerson v. White*, 2014-Ohio-3233.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.    100547

---

# HELEN RYERSON

**PLAINTIFF-APPELLANT**

vs.

# JEANE H. WHITE

**DEFENDANT-APPELLEE**

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2010-ADV-160832

**BEFORE:**    E.A. Gallagher, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**    July 24, 2014

**ATTORNEYS FOR APPELLANT**

Timothy J. Fitzgerald
James F. Koehler
Philip Wesley Lambert
John N. Neal
Koehler Neal L.L.C.
3330 Erieview Tower
1301 East Ninth Street
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

**For Jeane H. White**

Robert J. Dubyak
Anthony J. Trzaska
Dubyak Connick Sammon Thompson & Bloom, L.L.C.
3401 Enterprise Parkway
Suite 205
Cleveland, Ohio 44122

**For PNC Bank, N.A.**

Karen L. Giffen
Giffen & Kaminski, L.L.C.
1300 East Ninth Street
Suite 1600
Cleveland, Ohio 44114

EILEEN A. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant Helen Ryerson appeals from the judgment of the Cuyahoga County Probate Court overruling her objections to a magistrate's decision and adopting same. For the following reasons, we affirm.

{¶2} On August 13, 2010, Ryerson, daughter of Judy Duffy, filed a complaint and will contest action against defendant-appellee Jeane H. White, also a daughter of Duffy and the executor of Duffy's estate.

{¶3} The case was bifurcated on July 29, 2011, because there were no assets in Duffy's probatable estate due to the fact that her accounts, annuities and home transferred on death to White. As such, the validity of the transfer of Duffy's assets out of her probatable estate had to be decided before the validity of Duffy's 2009 will could be contested.

{¶4} The case proceeded to trial before a magistrate who issued his decision March 15, 2013 concerning the asset transfers. Ryerson objected to the magistrate's decision and White replied. On September 19, 2013, the court overruled Ryerson's objections and adopted the decision of the magistrate.

{¶5} The following facts were elicited at trial: In 1972, Ryerson, White, their father and Duffy immigrated to the state of West Virginia from China. At the time, Duffy had approximately a third-grade education and spoke virtually no English. After a move to Delaware and job changes, Duffy and her husband divorced.

{¶6} In 1993, Duffy had a will prepared that divided her probatable estate equally

between her daughters, Ryerson and White. In 2005, with the aid of White, Duffy relocated to Cuyahoga County. At the time, Ryerson lived in Texas but advised her mother to move to Cuyahoga County where White resided instead of Texas due to her own uncertain job situation.

{¶7} White assisted Duffy in locating a condominium and communicated purchase bids to a realtor at Duffy's request. Duffy paid cash for the property without White's assistance and White did not attend the closing. The condominium deed included a transfer on death provision and White was named as the sole beneficiary.

{¶8} From the time of Duffy's relocation to Cuyahoga County until her passing, Duffy lived on her own and completed day-to-day tasks such as banking and obtaining insurance without any assistance.

{¶9} In 2009, Duffy was diagnosed with cancer. White assisted Duffy in finding an attorney, Patrick Talty, in order to assist Duffy in preparing estate planning documents. At Duffy's request, Talty sought to prepare a transfer-on-death deed relating to the condominium. However, when he examined the existing deed he discovered that a transfer-on-death deed in favor of White already existed and informed Duffy of such. Talty testified that Duffy had apparently forgotten about the existing deed. When Duffy passed away on May 1, 2010, Talty prepared, notarized and recorded a survivorship affidavit in favor of White.

{¶10} While Duffy was in the hospital, White attempted to make herself a

signator to PNC Bank accounts by obtaining notarized signature cards, only to discover that she was already a signator and the beneficiary to those accounts. White offered conflicting testimony about her mother's signing of those cards and the notary testified at trial that he could not remember Duffy signing the cards.

{¶11} At the time of Duffy's death, she had two annuities and four bank accounts: one annuity through New York Life Insurance Co., one annuity through Great American Life Insurance Co., three joint accounts with survivorship rights through PNC Bank, and one IRA through PNC Bank. White was the sole beneficiary of both annuities and the IRA, held the PNC Bank accounts jointly with White and had survivorship rights in those accounts.

{¶12} At trial, Ryerson testified that Duffy's signatures on the various documents evidenced forgeries. In contrast to Ryerson's testimony, Alfred Rappoli, Duffy's banker, and Sharon West, a State Farm insurance office manager, testified to witnessing Duffy sign documents. Various witnesses testified to Duffy doing business with them by herself and that she was able to, and did ask reasonable questions about her accounts and understand what was explained to her. Contrary to Ryerson's portrayal of Duffy's limited skill with the English language, West testified that Duffy was very proficient with English. Also contrary to Ryerson's allegation that Duffy's affairs were being controlled by White, West testified that she did not know Duffy had daughters because she came in to State Farm twice per year by herself to handle insurance matters.

Similarly, Rappoli could not recall Duffy conducting banking with anyone's assistance.

{¶13} White testified that she was unaware of her status as beneficiary on Duffy's financial holdings until Duffy revealed her finances to White after she was diagnosed with cancer. White denied being involved with any of Duffy's banking transactions and testified that she never wrote checks or made transactions on Duffy's bank accounts despite the fact that she was listed as a signator on two accounts. White also testified that she did not ask Duffy to name her as the beneficiary on Duffy's condominium deed.

{¶14} After the trial court overruled Ryerson's objections and adopted the magistrate's decision, she filed this appeal. Ryerson objected to the trial court's refusal to apply a presumption of undue influence, the trial court's finding of no actual undue influence on the part of the defendant, the trial court's mishandling of fraudulent conduct on the part of the defendant defeating survivorship rights and erroneous evidentiary burdens and admittance.

{¶15} Appellant's first assignment of error states:

> The Probate Court erred by overruling the Plaintiff's objections to the Magistrate's Decision and adopting the Magistrate's Decision as the judgment of the Probate Court where, despite evidence of Defendant's confidential relationship with the decedent on her financial matters, and by having acted as the decedent's fiduciary, the burden to rebut the presumption of undue influence over the decedent was not shifted to the Defendant.

{¶16} A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148,

2010-Ohio-4493, ¶ 16. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable, not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶17} A presumption of undue influence arises when a party is in a position of trust or confidence with another. "Where a confidential or fiduciary relationship exists between a donor and donee, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee." *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246 (8th Dist.), citing *Willis v. Baker*, 75 Ohio St. 291, 79 N.E. 466 (1906). "In such circumstances, a presumption arises that the transfer is invalid and the burden going forward with evidence shifts to the transferor to demonstrate the absence of undue influence." *Id.*; *Hardy v. Fell*, 8th Dist. Cuyahoga No. 88063, 2007-Ohio-1287, ¶ 28.

{¶18} A "fiduciary relationship" is a relationship in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002 (8th Dist.), ¶ 32, citing *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996). However, a parent-child relationship alone is insufficient to establish a fiduciary relationship. *McAdams v. McAdams*, 80 Ohio St. 232, 243-244, 88 N.E. 542 (1909).

{¶19} A "confidential relationship exists whenever trust and confidence is placed

in the integrity and fidelity of another." *Golub v. Golub*, 8th Dist. Cuyahoga No. 97603, 2012-Ohio-2509, ¶ 33, citing *Ament* at ¶ 39. '''The determination concerning what constitutes a confidential (fiduciary) relationship is a question of fact dependent upon the circumstances in each case * * *.''' *Ciszewski v. Kolaczewski*, 9th Dist. Summit No. 26508, 2013-Ohio-1765, ¶ 10, quoting *Indermill v. United Sav.*, 5 Ohio App.3d 243, 245, 451 N.E.2d 538 (9th Dist.1982).

{¶20} In this instance, we cannot say that the trial court abused its discretion in adopting the magistrate's finding that no fiduciary or confidential relationship existed between White and Duffy such that it would be appropriate to apply a presumption of undue influence. The trial court determined that Ryerson failed to establish a fiduciary or confidential relationship between White and Duffy that went beyond the typical parent-child relationship. Ryerson's allegations that White controlled Duffy's financial dealing and possibly forged Duffy's signature on documents was refuted by the testimony of Rappoli and West. White did not regularly aid in her mother's business transactions and the only clear instance of White signing for Duffy, on a "general consent for health care services" document, was not conducted in a fiduciary capacity.

{¶21} Ryerson's appellant's first assignment of error is overruled.

{¶22} Ryerson's second assignment of error states:

The Probate Court erred by overruling the Plaintiff's objections to the Magistrate's Decision and adopting the Magistrate's Decision as the judgment of the Probate Court where the resulting judgment is against the manifest weight of the evidence.

{¶23} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶24} In order to show undue influence, the plaintiff must demonstrate: (1) a susceptible testator, (2) another's opportunity to exert influence, (3) the fact of improper influence exerted or attempted, and (4) the result showing the effect of such influence. *West v. Henry*, 173 Ohio St. 498, 510-511, 784 N.E.2d 200 (1962).

{¶25} As to the first three elements, the record reflects that Duffy made banking transactions on her own, was able to understand her investments and asked reasonable questions of bankers and insurance agents about her transactions. The record does not support Ryerson's contention that Duffy relied on White to conduct her financial affairs. Duffy lived independently from White and completed the overwhelming majority of her day-to-day tasks on her own. On this evidence, the trial court could reasonably have found that Duffy was not a susceptible testator, that White lacked an adequate opportunity to exert undue influence and that no such influence actually occurred.

{¶26} As the record contains competent credible evidence to support the trial court's conclusion that Ryerson failed to meet her burden of demonstrating actual undue influence, we cannot say that the trial court's judgment was against the manifest weight of the evidence.

**{¶27}** Appellant's second assignment of error is overruled.

**{¶28}** Ryerson's third assignment of error states:

The Probate Court erred by overruling the Plaintiff's objection to the Magistrate's Decision which ignored and dismissed the Defendant's fraudulent conduct in securing a falsely notarized signature of their mother on bank account documents and finding that such fraudulent conduct did not forfeit the Defendant's survivorship rights in those bank accounts.

**{¶29}** Ryerson argues that fraudulent conduct on the part of the defendant in 2009 in attempting to secure survivorship rights to various bank accounts held by Duffy defeats the survivorship rights in those accounts.

**{¶30}** The evidence at trial revealed that in 2009, White sought to have her name added as a signator to Duffy's PNC bank accounts. White testified that the bank provided her with a form to be notarized and that she had Brian Cook notarize this form. However, it was apparent from the testimony that Duffy, who was hospitalized at the time, did not sign the forms in Cook's presence. White testified that after having the documents notarized she realized that Duffy needed to sign them as well and that Duffy later did so at the hospital.

**{¶31}** Ryerson relies on *Ross v. Barker*, 101 Ohio App.3d 611, 619, 656 N.E.2d 363 (2d Dist.1995), as authority for her proposition that the allegedly fraudulent activity of White should have extinguished White's preexisting survivorship rights in the accounts. In *Ross*, a daughter handled the finances of her "easily imposed upon" and "dependent" father. In so doing, the court found that she had a duty to deal with him in

good faith and that by obtaining a possessory interest in certain funds by placing her father's money into accounts owned by both the daughter solely and by her and her father jointly, she had engaged in fraudulent conduct. The Second District effectively held that the fraudulent conduct defeated Barker's survivorship interest in the accounts and extinguished the interest obtained by the fraudulent conduct.

{¶32} *Ross* has no bearing on the instant case because, as the trial court noted, even if the court were to find that White engaged in notary fraud in 2009, she had already been named beneficiary on the accounts in 2005.

{¶33} Unlike in *Ross*, there is no evidence that White placed her mother's money into accounts owned solely by White or jointly by White and Duffy. There was no interest obtained by White's alleged fraudulent conduct in 2009 because White had an ownership interest in the accounts prior to the conduct. The trial court did not abuse its discretion in holding White's status as sole beneficiary remained despite her conduct in 2009.

{¶34} Appellant's third assignment of error is overruled.

{¶35} Ryerson's fourth assignment of error states:

The Probate Court erred by overruling the Plaintiff's objection to the Magistrate's Decision rejecting Plaintiff's forgery claims based upon the erroneous evidentiary burden placed upon Plaintiff to present independent expert testimony in order to establish that her mother's signatures on financial and bank documents were forgeries.

{¶36} At trial, Ryerson asserted that her mother's signature on every relevant

financial document had been forged.    The trial court rejected her contention.

{¶37} Ryerson argues that the magistrate required her to produce expert testimony demonstrating that her mother's signature on various documents was forged.

{¶38} As noted by the trial court, the magistrate did not, in fact, require Ryerson to provide expert testimony but simply noted that Ryerson's self-serving testimony stood alone.   In fact, the record reflects that White's testimony on the validity of Duffy's signatures contradicted Ryerson's and was supported by testimony of independent witnesses who had observed Duffy signing documents, including the documents in dispute.   The trial court merely cited expert testimony as an example of evidence that may have aided Ryerson in demonstrating that her mother's signature on various documents was forged.   The trial court did not abuse its discretion in overruling Ryerson's objection regarding the handwriting expert.

{¶39} Ryerson's fourth assignment of error is overruled.

{¶40} Ryerson's fifth assignment of error states:

The Probate Court erred by overruling the Plaintiff's objection to the Magistrate's Decision based upon the erroneous and prejudicial cross-examination of Plaintiff in violation of Evid.R. 403(A) and Evid.R. 608(B) which deprived Plaintiff of a fair trial.

{¶41} "Decisions concerning the admission or exclusion of evidence are within the discretion of the trial court and will not be reversed absent an abuse of that discretion." *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, ¶ 17, citing *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834

N.E.2d 323.

**{¶42}** Evid.R. 608(B) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

**{¶43}** Absent a showing that a party's substantial rights were affected by the admission of evidence, we will disregard errors in the admission of evidence as harmless error. *See* Civ.R. 61. Litigants are not entitled to a perfect trial, only a fair one. *Spisak v. Salvation Army*, 8th Dist. Cuyahoga No. 99633, 2013-Ohio-5429, citing *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153. The erroneous admission of evidence "will not justify reversal of an otherwise valid adjudication where the error does not affect the substantial rights of the complaining party." *O'Brien v. Angley*, 63 Ohio St.2d 159, 407 N.E.2d 490 (1980) (citing Civ.R. 61; R.C. 2309.59).

**{¶44}** Over objection, the magistrate allowed several documents detailing previous instances where Ryerson made allegations of misconduct against members of her family, including appellee, their father, and their father's wife. While the content of these documents are arguably relevant concerning Ryerson's character for truthfulness,

this is the exact type of extrinsic evidence that Evid.R. 608(B) seeks to exclude. *State v. Mackey*, 8th Dist. Cuyahoga No. 75300, 1999 Ohio App. LEXIS 5902 (Dec. 9, 1999); *State v. Curlee-Jones*, 8th Dist. Cuyahoga No. 98233, 2013-Ohio-1175, ¶ 21-22; *State v. Clark*, 8th Dist. Cuyahoga No. 95928, 2011-Ohio-4109, ¶ 36.

**{¶45}** However, we find any error to be harmless. Under Civ.R. 61, harmless error means:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

**{¶46}** In order to determine whether a substantial right has been affected, '''the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury * * * would probably have made the same decision.''' *Cox v. MetroHealth Med. Ctr. Bd. of Trustees*, 8th Dist. Cuyahoga No. 96848, 2012-Ohio-2383, ¶ 23, quoting *O'Brien*, 63 Ohio St.2d at 165, 407 N.E.2d 490 (1980).

**{¶47}** Even if the extrinsic evidence had not been admitted, the record is rife with evidence to impeach Ryerson's credibility, including her own evasive answers to questions posed by the magistrate. Furthermore, portions of the content of the extrinsic evidence were redundant in light of Ryerson's cross-examination testimony. Therefore,

since there is no showing of resulting prejudice to Ryerson as a result of the error, we hold the error to be harmless.

**{¶48}** Appellant's fifth assignment of error is overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Common Pleas Court, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR