EILEEN T. GALLAGHER, P.J.:
{¶ 1} Defendants-appellants, Mark Fourtounis ("Mark"), Global Outdoor Solutions, L.L.C. ("Global"), and Nikolas and Marika Fourtounis, individually, and as Trustees of the Nikolas and Marika Fourtounis Living Trust ("the Fourtounises") (collectively "appellants"), appeal from various orders of the trial court following a jury verdict rendered against plaintiffs-appellees Evangelos Stamatopoulos and Lightning Capital Holdings, L.L.C. ("appellees"). Appellants raise the following six assignments of error:
1. The trial court erred in dismissing with prejudice all claims that were not submitted to the jury.
2. The trial court erred in failing to award appellants reasonable attorney fees incurred to enforce the settlement agreement.
3. The trial court erred in failing to award appellants attorney fees when an unconstitutional seizure of their property was established and the property ordered returned.
4. The trial court erred in failing to include the provisions of the March 30, 2012 Erie Painting letter agreement in the judgment of specific performance.
5. The trial court erred in denying Global's motion for new trial on damages.
6. The trial court erred in denying appellants' motion to amend the pleadings to conform the evidence.
{¶ 2} Appellees have filed a cross-appeal, raising the following cross-assignments of error:
*1003 1. The trial court erred as a matter of law in holding and then instructing the jury that the seizure of property pursuant to a valid order of possession issued in the replevin action was unconstitutional, and it was plain error to decide this dispositive issue via ruling on an evidentiary motion in limine.
2. The trial court erred as a matter of law in instructing the jury that defendants were entitled to damages for the seizure of property belonging to plaintiffs and loss of use of one piece of the property pledged as collateral.
3. The trial court abused its discretion by entering a money judgment in favor of Nikolas and Marika Fourtounis and then ordering specific performance.
4. The trial court erred as a matter of law by directing a verdict in favor of appellants on Mr. Stamatopoulos' conversion claim for relief.
5. The verdict in favor of Nikolas and Marika Fourtounis is against the manifest weight of the evidence and was based in part upon plain error as a matter of law in admitting incompetent testimony as to the possible rental value of the Super Sucker by a witness who was neither the owner of the property or qualified as an expert witness.
{¶ 3} After careful review or the record and relevant case law, we reverse and remand the matter for further proceedings consistent with this opinion.
I. Procedural and Factual History
A. Business Relationship
{¶ 4} The record reflects that prior to the filing of this case, Mark operated contracting, painting, and landscaping companies known as All Seasons Contracting and Painting, Inc., All Seasons Contracting and Landscaping, Co., and All Seasons Contracting, Inc. (collectively "All Seasons"). During his operation of the All Seasons businesses, Mark purchased vehicles and specialized equipment for bridge painting, bridge resurfacing, and landscaping. Mark personally guaranteed the debt for these purchases, and Fifth Third Bank had a security interest in the assets. In 2010, the All Season companies began to struggle, and Fifth Third demanded immediate repayment on All Seasons' outstanding loan balance in the amount of $1,200,000. As a result of the demand, both All Seasons and Mark, personally, filed for bankruptcy.
{¶ 5} In the midst of his bankruptcy proceedings, Mark's personal friend, appellee Evangelos Stamatopoulos, agreed to purchase the assets of All Seasons for $220,000, and the bankruptcy court issued an order transferring possession of the equipment to Stamatopoulos free and clear from all other encumbrances.
{¶ 6} In order to pay the $220,000 for the equipment, Stamatopoulos pledged his New York City apartment as collateral. However, Stamatopoulos was not permitted to take out a second mortgage on the apartment and had to pay its outstanding balance of $31,452 before he could use it as collateral. The record reflects that Mark's parents, the Fourtounises, agreed to loan Stamatopoulos funds to satisfy his outstanding loan. The Fourtounises allege that they advanced "an additional $76,249 for funds to repair the equipment and an additional $39,440 to cover business expenses and interest on the purchase money loan."
{¶ 7} Lightning Capital Holdings was formed to take title of the assets after the bankruptcy sale closed. Stamatopoulos testified that he was the sole owner of Lighting Capital Holdings and that Mark's responsibilities with the company included locating all of the equipment that Stamatopoulos had purchased in the bankruptcy proceedings, preparing the equipment for use, and moving the equipment to a warehouse *1004 owned by Mark's brother. Mark, however, maintained that he was not an employee, but instead was Stamatopoulos's equal partner in Lighting Capital Holdings and the venture to purchase the All Seasons assets from Fifth Third Bank.
{¶ 8} After several months, the personal relationship between Mark and Stamatopoulos deteriorated. By March 2012, the parties severed their business arrangement and entered into a settlement agreement in an effort to resolve their "various financial and business dealings." In the settlement agreement the parties agreed to the following relevant provisions:
1. Concurrently with the execution of this Agreement, [appellees] shall execute and deliver a Cognovit Promissory Note to [the Fortounises] in the amount of $112,000, said amount due and payable on or before June 30, 2012. * * * Said cognovit promissory note obligation shall be secured by certain equipment owned by [appellees], to wit: a Volvo Truck, a so called "Super Sucker" * * *.
Said Super Sucker is hereby pledged as security for payment of the Cognovit Promissory Note by titling it to and placing it in the possession of [the Fourtounises.] In the event that [appellees] shall default upon the said cognovit promissory obligation, * * * [the Fourtounises] may take free and clear title to said Super Sucker and retain, use and/or dispose of it as they shall deem fit in full satisfaction of the note or may pursue other legal remedies available to them pursuant to Ohio law and in accordance with the terms of said cognovit promissory note.
* * *
2. As additional consideration to the amount set forth in the Cognovit Promissory Note referenced in paragraph 1 above, it is further agreed that [appellees] will transfer title to, free and clear of any and all claims and/or encumbrances, vehicles and/or equipment to [Mark] * * * as identified on the attached Exhibit B, incorporated herein.
{¶ 9} The terms of the cognovit note, signed by appellees on March 30, 2012, provided that during the pledge period, title to the Volvo vacuum truck would be held by the Fourtounises, but Stamatopoulos would be permitted to use the truck while it is pledged as collateral if he secured a bond to protect against "resulting value diminution." Following the execution of the settlement agreement and cognovit promissory note, Stamatopoulos moved his business operations to a new location, and Mark began operating Global, a landscaping company, with some of the equipment purchased in the bankruptcy sale.
{¶ 10} Thereafter, a dispute arose between the parties regarding the ownership of various pieces of business equipment. Appellants believed that the settlement agreement signed by Stamatopoulos addressed the disposition of the assets. However, Stamatopoulos argued he was forced to sign the agreement under duress.
B. Complaint and Counterclaims are Initiated
{¶ 11} In Stamatopoulos v. All Seasons Contr., Inc. , 8th Dist. Cuyahoga No. 101439, 2015-Ohio-1141, 2015 WL 1375727, this court summarized the procedural history of this action as follows:
The record reflects that on June 27, 2012, appellees filed a complaint in Cuyahoga County Common Pleas Court seeking replevin, an order of possession, "and other relief" against the following parties: (1) All Seasons Contracting, Inc., (2) All Seasons Contracting and Painting, Inc., (3) All Seasons Contracting and Landscaping, (4) Mark Fourtounis, (5) Global, (6) "Doe Corporation," and (7) the Fourtounises.
*1005 Appellees presented seven claims: (1) "alter ego," (2) breach of contract, (3) fraudulent inducement, (4) conversion, (5) replevin, (6) unjust enrichment, and (7) trespass to chattel. Appellees also sought and obtained from the trial court, without posting a bond, an emergency order of possession of 44 specific pieces of machinery, together with "[a]ll other assets purchased by the Stamatopoulos Parties in the bankruptcy of Defendants All Seasons * * * which are reasonably identifiable and which have yet to be turned over * * *." The record reflects that only the Fourtounises received service of the complaint.
Nevertheless, all of the appellants filed in the trial court requests for a hearing and an emergency stay of the order of possession. The court conducted a hearing and ordered appellants to provide appellees with a list of the locations of the property at issue.
On November 9, 2012, the Fourtounises filed a separate action against appellees in the trial court seeking confession of judgment on a cognovit note. Shortly thereafter, these same appellants filed an answer to appellees' claims in the original case.
On November 21, 2012, Mark filed an answer and a counterclaim to appellees' claims in the original case. Mark averred in his answer that the All Seasons companies had been "liquidated by order of the U.S. Bankruptcy Court on June 13, 2011 and the corporate charters for each corporation [were] thereafter cancelled by the Ohio Secretary of State."
In his counterclaim, Mark sought an order from the trial court to enforce a settlement agreement. Mark averred that on March 30, 2012, appellee Stamatopoulos had entered into an agreement with appellants to resolve claims for "past due rent," and for "repayment of loans."
According to the terms of this agreement, which was attached to Mark's counterclaim as an exhibit, Stamatopoulos executed a "Cognovit Promissory Note made payable to Manolis Investments, LLC" and the Fourtounises in the amount of $112,000. As security for the note, Stamatopoulos would, inter alia, transfer both the title and the possession of a Volvo truck known as a "Super Sucker" to the Fourtounises. Mark claimed that appellees had failed to comply with the terms of the settlement agreement, and demanded that the trial court enforce it.
For some time, the cases proceeded separately. On May 30, 2013, the trial court consolidated the two cases. In July 2013, the Fourtounises amended their cognovit complaint against appellees. The Fourtounises set forth five claims in their amended complaint: (1) breach of the settlement agreement, (2) breach of the Note, (3) wrongful attachment, (4) violation of civil rights under color of state law, and (5) punitive damages.
On May 30, 2013, Global filed an answer to appellees' original complaint, together with a counterclaim. The counterclaim alleged six causes of action: (1) breach of the settlement agreement, (2) breach of the "Letter Agreement," (3) wrongful seizure of property, (4) violation of civil rights under state law, (5) malicious conduct intended to cause economic harm, and (6) malicious conduct intended to intimidate Global from pursuing its civil remedies.
After appellees filed an answer to the Fourtounises' amended complaint in the cognovit case, the trial court referred the cases to mediation. Mediation proved unsuccessful; therefore, the court resumed trial preparations. In July 2013, *1006 appellees filed answers to Mark's and Global's counterclaims. Appellees asserted the defense of duress.
The record reflects that the cases proceeded to a jury trial in February 2014, although the trial court's docket is silent as to the precise date. According to one of the trial court's journal entries, motions "were ruled on during trial; transcript will indicate rulings."
The jury's verdict forms supplied by the parties pursuant to App.R. 9(E) indicate that the jury found for the Fourtounises against appellees in the amount of $100,000 "on their counterclaim." Presumably, this was the Fourtounises' claim for "wrongful attachment," because the jury's answer to an interrogatory stated that the Fourtounises proved "by a preponderance of the evidence that they were damaged by [Stamatopoulos's] seizure of the Super Sucker." Although the jury made no specific findings on either Mark's or Global's counterclaims against appellees, when asked in an interrogatory whether Mark and Global proved they were damaged by appellees' seizure of their trucks and equipment, the jury answered, "No." The record does not reflect that the jury rendered any verdict on either appellees' claim for fraudulent inducement or appellees' defense of duress.
Despite this absence, on April 3, 2014, in response to appellants' March 5, 2014 "request for an entry of judgment," the trial court issued a journal entry that stated:
As a result of the jury's verdict finding that [appellees] failed to prove duress in the signing of the Settlement Agreement and Cognovit Note, the parties are hereby ordered to comply with the terms and conditions of the Settlement Agreement, signed by the parties on or about March 30, 2012 within 30 days of this journal entry. The court retains jurisdiction over all post-judgment motions. * * * Final. * * *.
On April 16, 2014, Global filed a motion for a new trial "on damages." On April 17, 2014, appellants filed a "motion for entry of final appealable judgment."
On May 1, 2014, the trial court issued another journal entry that stated:
Entry of 04/03/2014 is amended to include the following language: inasmuch as it was the clear intention of the parties and the jury was advised, that in the event that [appellees] did not prevail on their claim of duress in signing the Settlement Agreement, the Court would enforce the Settlement Agreement. In addition, the jury returned a verdict in favor of [the Fourtounises] for $100,000. It is so ordered. Final.
On May 14, 2014, the trial court issued a journal entry that denied Global's motion for a new trial on damages. The same journal entry stated that appellants' motions for entry of a final appealable judgment were "moot."
Id. at ¶ 4-18.
{¶ 12} The parties appealed, but this court dismissed for lack of a final, appealable order. See Stamatopoulos , 8th Dist. Cuyahoga No. 101439, 2015-Ohio-1141, 2015 WL 1375727. On remand, the trial court issued a two-page order on August 26, 2015, stating, in relevant part:
On February 21, 2015, the jury returned a verdict in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos ("Lightning Capital Holdings") and awarded damages in the amount of $100,000. The jury further found that Global Outdoor Solutions did not prove by a preponderance of the evidence that it was damaged by Evangelos Stamatopoulos by the seizure *1007 of the trucks and equipment. Additionally, the jury found that Evangelos Stamatopoulos did not prove by clear and convincing evidence the affirmative defense of duress in signing the Cognovit Note and Settlement Agreement.
All parties prepared and agreed to the jury instructions, jury interrogatories and verdict forms that were submitted to the jury. Any claims not addressed by the agreed-to forms are dismissed with prejudice pursuant to Civ.R. 41(B)(1).
Pursuant to the agreed-to jury instructions, the jury was instructed, "If you find that plaintiffs failed to establish the duress defense by clear and convincing evidence, the Court will order the parties to perform the obligations imposed by the Settlement Agreement and Note ."
Therefore, based on the jury's verdict, this court hereby finds in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos and Lightning Capital Holdings in the amount of $100,000. Additionally, pursuant to the agreed-to jury instructions, the parties are hereby ordered to comply with the Settlement Agreement and Cognovit Note attached hereto as Exhibit A and Exhibit B within 30 days of the date of this order.
{¶ 13} Following the final entry of judgment, Stamatopoulos filed a "notice of compliance" with the court's order of specific performance, asserting that he gave appellants a tender payment of the $100,000 judgment, and also executed titles, possession, and keys listed in Exhibit B of the parties' settlement agreement that were still in his possession. Stamatopoulos retained possession of the Volvo vacuum truck. In response, the Fourtounises' asked the court for a further order awarding title and possession of the Volvo vacuum truck pursuant to the terms of the Cognovit Note. Stamatopoulos opposed the motion and argued that all claims related to the Cognovit Note were not submitted to the jury and were dismissed by the court after the trial under Civ.R. 41(A)(1). The trial court denied the Fourtounises' motion as "moot."
{¶ 14} Appellants and appellees now appeal from various orders of the trial court.
II. Law and Analysis
{¶ 15} After careful consideration, we find this court is required to remand the matter to the trial court for clarification of its final entry of judgment with respect to the scope of the parties' rights and responsibilities following the jury's verdict. Specifically, this court is concerned with the unsettled confusion surrounding the trial court's reference to the Cognovit Note in its August 26, 2015 final entry of judgment. In the absence of clarity, this court is not in the position to consider the merits of the parties' assigned errors where the inconsistencies in the trial court's journal entries have created fundamental differences of opinion concerning the precise scope of damages and specific performance ordered in this case.
{¶ 16} As stated, this court dismissed the original appeal for a lack of a final, appealable order. While the trial court complied with the instructions of this court to clarify the status of undisposed claims, it appears the court's amended final entry contains additional language regarding the Cognovit Note that was not part of the trial court's prior orders.
{¶ 17} In an effort to clarify its final entry of judgment on remand, the trial court's August 26, 2015 final order provides, in relevant part:
Pursuant to the agreed-to jury instructions, the jury was instructed, "If you find that plaintiffs failed to establish the duress defense by clear and convincing *1008 evidence, the Court will order the parties to perform the obligations imposed by the Settlement Agreement and Note ."
Therefore, based on the jury's verdict, this court hereby finds in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos and Lightning Capital Holdings in the amount of $100,000. Additionally, pursuant to the agreed to jury instructions, the parties are hereby ordered to comply with the Settlement Agreement and Cognovit Note attached hereto as Exhibit A and Exhibit B within 30 days of the date of this order.
(Emphasis added.)
{¶ 18} Thus, the clear language of the trial court's final entry of judgment states that the appellees are required to pay the Fourtounises $100,000, and comply with the terms of both the Settlement Agreement and the Cognovit Note. Conversely, the trial court's original entry of judgment, issued in April 2014, stated:
As a result of the jury's verdict finding that [Stamatopoulos] failed to prove duress in the signing of the Settlement Agreement and Cognovit Note, the parties are hereby ordered to comply with the terms and conditions of the Settlement Agreement , signed by the parties on or about March 30, 2012 within 30 days of this journal entry. The court retains jurisdiction over all post-judgment motions. * * * Final. * * *.
(Emphasis added.)
{¶ 19} In May 2014, the trial court issued an amended journal entry, stating:
Entry of 04/03/2014 is amended to include the following language: inasmuch as it was the clear intention of the parties and the jury was advised, that in the event that [appellees] did not prevail on their claim of duress in signing the Settlement Agreement , the Court would enforce the Settlement Agreement . In addition, the jury returned a verdict in favor of [the Fourtounis'] for $100,000. It is so ordered. Final.
(Emphasis added.)
{¶ 20} Unquestionably, the April 2014 entry of judgment and the May 2014 amended journal entry do not order the parties to comply with the terms and conditions of the Cognovit Note. The entries solely require enforcement of the Settlement Agreement. Thus, the trial court's August 2015 final entry of judgment constitutes a departure from the language used in the April 2014 and May 2014 judgment entries by expressly adding the obligation that Stamatopoulos comply with the terms and conditions of the Cognovit Note. This departure explains the basis of the parties' post-judgment motions and their vastly different interpretations in their appellate briefs concerning the breadth of the trial court's final entry of judgment.
{¶ 21} Having reviewed the record, we recognize that the inclusion of the Cognovit Note in the August 26, 2015 final entry of judgment was likely intentional and was not the result of clerical error. Pursuant to the language of Jury Instruction No. 11[1] and the jury's ultimate determination that the Settlement Agreement and Cognovit Note were not the product of duress, it appears the appellants are entitled to enforce both the Settlement Agreement and Cognovit Note as the entry currently provides. However, given the legal and monetary significance of the modification, we *1009 believe the trial court is required to explain and clarify the basis for adding the enforcement of the Cognovit Note. We believe clarity is necessary in order to provide the parties with the opportunity to adequately brief the issue on appeal.
{¶ 22} Accordingly, we find the matter must be remanded for the trial court to (1) clarify Stamatopoulos' obligations under the Settlement Agreement and Cognovit Note, or (2) correct the final entry of judgment to exclude the reference to Cognovit Note if it was mistakenly included. In addition, the court shall state whether or not appellees obligation to pay the damages in the amount of $100,000 is separate and apart from its obligations under the Settlement Agreement and Cognovit Note.
{¶ 23} The foregoing issues are of particular importance given the value of the Volvo vacuum truck. If there was judgment on the Cognovit Note, as the final entry of judgement suggests, appellees must comply with the terms of that instrument, wherein Stamatopoulos unconditionally promised to pay the Fourtounises the sum of $112,000 and pledged the Volvo vacuum truck as security. Arguably, appellees' failure to comply with the terms of the Cognovit Note entitles appellants to free and clear title of the Volvo vacuum truck, as the Cognovit Note states:
In the event [appellees] shall default upon this Cognovit Promissory Note obligation, [the Fourtounises] may take free and clear title to said Super Sucker and thereafter retain, use and/or dispose of it as they shall deem fit, in full satisfaction of this note obligation, or pursue other legal remedies available to the Creditor pursuant to Ohio law and in accordance with this promissory note.[2]
{¶ 24} On remand, the trial court shall provide the parties with a detailed explanation of what actions the appellees must take in order to satisfy the jury's award of damages, its obligations under the Settlement Agreement, and, if appropriate, its obligations under the Cognovit Note. Specifically, the court must address the parties' competing claims to ownership of the Volvo vacuum truck. In our view, clarification on these issues will resolve much of the different interpretations of the court's order that are expressed (1) in appellants' proposed order of specific performance; (2) in appellees' notice of compliance with the trial court's final entry of judgment; and (3) throughout the parties' appellate briefs, including appellees' third cross-assignment of error, and appellants' response to the arguments raised therein.[3]
{¶ 25} The obligations of the parties is integral to the majority of the assigned errors raised in appellants' appeal and appellees' cross-appeal. Accordingly, we believe it would be impractical to address any of the assigned errors until the trial court's final entry of judgment clearly defines the rights and responsibilities of the parties and explains the inconsistencies in its entries regarding the scope of specific performance and damages ordered in this case.
*1010 {¶ 26} Judgment reversed and remanded.
FRANK D. CELEBREZZE, JR., J., CONCURS;
PATRICIA ANN BLACKMON, J., DISSENTS WITH SEPARATE OPINION

Jury Instruction No. 11 reads, in relevant part:
"If you find [Stamatopoulos] failed to establish the duress defense the Court will order the parties to perform the obligations imposed by the settlement agreement and note. "
(Emphasis added.)

On appeal, the Fourtounises state that they wish to enforce the terms of the cognovit note entitling them to free and clear title.

Appellees have continuously argued that the payment of $100,000 to the appellants "fully satisfied the claims of [the Fourtounises] including those arising out or the Cognovit Note and Settlement Agreement and associated security interests." In contrast, appellants maintain that the trial court's final entry of judgment entitles them to damages in the amount of $100,000 for lost rental income, and specific performance of the Settlement Agreement and Cognovit Note, which entitled the Fourtounises to free and clear title of the Volvo vacuum truck.