[Cite as *Stamatopoulos v. All Seasons Contracting, Inc.*, 2020-Ohio-566.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EVANGELOS STAMATOPOULOS,    :
ET AL.

                               :

        Plaintiffs-Appellants/
        Cross-Appellees,            :

                                          Nos. 107783 and 107788

        v.                             :

ALL SEASONS CONTRACTING, INC.    :
ET AL.,

                               :

        Defendants-Appellees/
        Cross-Appellants.        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART
**RELEASED AND JOURNALIZED:** February 20, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-12-785907 and CV-12-795314

---

### *Appearances:*

Thrasher, Dinsmore & Dolan, L.P.A., Mary Jane Trapp,
and Ezio A. Listati, *for appellants/cross-appellees.*

John M. Manos Co., L.P.A., and John M. Manos, *for
appellees/cross-appellants.*

RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiffs-appellants/cross-appellees Evangelos Stamatopoulos ("Stamatopoulos") individually, and as managing member of Lightning Capital Holdings, L.L.C. ("Lightning") (collectively "Appellants"), appeals from the September 12, 2018 journal entry clarifying an August 26, 2015 final entry of judgment in favor of defendants-appellees/cross-appellants Nikolas and Marika Fourtounis, trustees of the Nikolas and Marika Fourtounis Living Trust (collectively "the Fourtounises"). The Fourtounises and defendants-appellees Mark Fourtounis ("Mark"), All Seasons Contracting, Inc., and Global Outdoor Solutions, L.L.C. ("Global") (collectively, "Appellees") filed a cross-appeal. For the reasons that follow, we affirm in part, and vacate in part.

**Procedural and Substantive History**

{¶ 2} The instant appeal is the result of protracted litigation dating back to June 2012. The underlying dispute arose out of a deteriorated relationship, and a convoluted set of business deals involving multiple individuals and entities. The following factual history was set forth in *Stamatopoulos v. All Seasons Contr.*, 2018-Ohio-379, 104 N.E.3d 1001 (8th Dist.) ("Stamatopoulos II"):

> The record reflects that prior to the filing of [the underlying] case, Mark operated contracting, painting, and landscaping companies known as All Seasons Contracting and Painting, Inc., All Seasons Contracting and Landscaping, Co., and All Seasons Contracting, Inc. (collectively "All Seasons"). During his operation of the All Seasons businesses, Mark purchased vehicles and specialized equipment for bridge painting, bridge resurfacing, and landscaping. Mark personally guaranteed the debt for these purchases, and Fifth Third Bank had a security interest in the assets. In 2010, the All Seasons companies began to struggle,

and Fifth Third demanded repayment on All Seasons' outstanding loan balance in the amount of $1,200,000. As a result of the demand, both All Seasons and Mark, personally, filed for bankruptcy.

In the midst of his bankruptcy proceedings, Mark's personal friend, [Stamatopoulos], agreed to purchase the assets of All Seasons for $220,000 [pursuant to an Asset Purchase Agreement] and the bankruptcy court issued an order transferring possession of the equipment to Stamatopoulos free and clear from all other encumbrances.

In order to pay the $220,000 for the equipment, Stamatopoulos pledged his New York City apartment as collateral. However, Stamatopoulos was not permitted to take out a second mortgage on the apartment and had to pay its outstanding balance of $31,452 before he could use it as collateral. The record reflects that Mark's parents, the Fourtounises, agreed to loan Stamatopoulos funds to satisfy his outstanding loan. The Fourtounises allege that they advanced "an additional $76,249 for funds to repair the equipment and an additional $39,440 to cover business expenses and interest on the purchase money loan."

Lightning Capital Holdings was formed to take title of the assets after the bankruptcy sale closed. Stamatopoulos testified that he was the sole owner of Lightning Capital Holdings and that Mark's responsibilities with the company included locating all of the equipment that Stamatopoulos had purchased in the bankruptcy proceedings, preparing the equipment for use, and moving the equipment to a warehouse owned by Mark's brother. Mark, however, maintained that he was not an employee, but instead was Stamatopoulos's equal partner in Lightning Capital Holdings and the venture to purchase the All Seasons assets from Fifth Third Bank.

After several months, the personal relationship between Mark and Stamatopoulos deteriorated. By March 2012, the parties severed their business arrangement and entered into a settlement agreement in an effort to resolve their "various financial and business dealings." In the settlement agreement the parties agreed to the following relevant provisions:

1. Concurrently with the execution of this Agreement, [Stamatopoulos] shall execute and deliver a Cognovit Promissory Note to [the Fourtounises] in the amount of $112,000, said amount due and payable on or before June 30, 2012. * * * Said cognovit promissory note

obligation shall be secured by certain equipment owned by [Stamatopoulos], to wit: a Volvo Truck, a so called "Super Sucker" * * *.

Said Super Sucker is hereby pledged as security for payment of the Cognovit Promissory Note by titling it to and placing it in the possession of [the Fourtounises.] In the event that [Stamatopoulos] shall default upon the said cognovit promissory obligation, * * * [the Fourtounises] may take free and clear title to said Super Sucker and retain, use and/or dispose of it as they shall deem fit in full satisfaction of the note or may pursue other legal remedies available to them pursuant to Ohio law and in accordance with the terms of said cognovits promissory note.

* * *

2. As additional consideration to the amount set forth in the Cognovit Promissory Note referenced in paragraph 1 above, it is further agreed that [Stamatopoulos] will transfer title to, free and clear of any and all claims and/or encumbrances, vehicles and/or equipment to [Mark] * * * as identified on the attached Exhibit B, incorporated herein.

The terms of the cognovit note, signed by appellees on March 30, 2012, provided that during the pledge period, title to the Volvo vacuum truck would be held by the Fourtounises, but Stamatopoulos would be permitted to use the truck while it is pledged as collateral if he secured a bond to protect against "resulting value diminution." Following the execution of the settlement agreement and cognovit promissory note, Stamatopoulos moved his business operations to a new location, and Mark began operating Global, a landscaping company, with some of the equipment purchased in the bankruptcy sale.

Thereafter, a dispute arose between the parties regarding the ownership of various pieces of business equipment. [Appellees] believed that the settlement agreement signed by Stamatopoulos addressed the disposition of the assets. However, Stamatopoulos argued he was forced to sign the agreement under duress.

{¶ 3} The procedural history of this case is equally convoluted, in part because two separate actions were initiated and proceeded separately for several months. On June 27, 2012, Stamatopoulos filed a verified complaint for replevin, order of possession, and other relief in Cuyahoga County Court of Common Pleas

against the All Seasons companies, Mark, Global, "Doe Corporation," and the Fourtounises. Stamatopoulos presented seven claims: (1) alter ego, (2) breach of contract related to the asset purchase agreement, (3) fraudulent inducement/intentional misrepresentation related to the asset purchase agreement, (4) conversion, (5) replevin/injunctive relief, (6) unjust enrichment, and (7) trespass to chattel. Stamatopoulos also sought and obtained from the trial court an emergency order of possession of 44 specific pieces of machinery, together with "[a]ll other assets purchased by the Stamatopoulos Parties in the bankruptcy of Defendants All Seasons * * * which are reasonably identifiable and which have yet to be turned over * * *." The order of possession explicitly stated that Stamatopoulos was not required to post a bond to obtain the relief set forth therein.

{¶ 4} All of the Appellees filed requests for a hearing and an emergency stay of the order of possession. The court conducted a hearing and ordered Appellees to provide Stamatopoulos with a list of the locations of the property at issue. On July 16, 2012, Appellees filed a motion to transfer the case to the court's commercial docket. The court denied this motion on July 19, 2012. On July 24, 2012, Appellees filed a notice of removal to federal court. On October 26, 2012, the case was remanded to the Cuyahoga County Court of Common Pleas. On November 16, 2012, Global filed a motion requesting the court order Stamatopoulos to post a bond.

{¶ 5} On November 9, 2012, the Fourtounises initiated a separate action against Stamatopoulos in the trial court seeking confession of judgment on a cognovit note. The Fourtounises obtained a cognovit judgment in the amount of

$112,000 against Stamatopoulos. On November 21, 2012, the Fourtounises filed an answer to Stamatopoulos's claims in his replevin action.

{¶ 6} On November 21, 2012, Mark filed an answer and counterclaim to Stamatopoulos's claims in the original case. Mark averred in his answer that the All Seasons companies had been "liquidated by order of the U.S. Bankruptcy Court on June 13, 2011 and the corporate charters for each corporation [were] thereafter cancelled by the Ohio Secretary of State." In his counterclaim, Mark sought an order from the trial court to enforce the settlement agreement. Mark averred that on March 30, 2012, Stamatopoulos had entered into an agreement with Appellees to resolve claims for "past due rent," and for "repayment of loans." According to the terms of this agreement, which was attached to Mark's counterclaim as an exhibit, Stamatopoulos executed a "Cognovit Promissory Note made payable to Manolis Investments, LLC" and the Fourtounises in the amount of $112,000. As security for the note, Stamatopoulos would, inter alia, transfer both the title and the possession of the Super Sucker to the Fourtounises. Mark claimed that Stamatopoulos had failed to comply with the terms of the settlement agreement, and demanded that the trial court enforce it.

{¶ 7} On November 29, 2012, Stamatopoulos filed a motion to stay execution of the cognovit judgment, vacate the cognovit judgment, and consolidate the Fourtounises' action with his action. On November 30, 2012, the court held a hearing on this motion.

{¶ 8} For some time, the cases proceeded separately. On March 4, 2013, the trial court granted Stamatopoulos's motion to stay execution of the cognovit judgment and vacated that judgment. In a May 28, 2013 journal entry corresponding to a May 16, 2013 hearing, the court noted that Global's motion to order a bond in Stamatopoulos's replevin action had been withdrawn.

{¶ 9} On May 30, 2013, the trial court consolidated the two cases. In July 2013, the Fourtounises amended their complaint against Stamatopoulos, alleging (1) breach of the settlement agreement, (2) breach of the note, (3) wrongful attachment, (4) violation of civil rights under color of state law, and (5) entitlement to punitive damages based on actual malice.

{¶ 10} On May 30, 2013, Global filed an answer to Stamatopoulos's original complaint, together with counterclaims alleging (1) breach of the settlement agreement, (2) breach of the letter agreement,[1] (3) wrongful seizure of property, (4) violation of civil rights under color of state law, (5) malicious conduct intended to cause economic harm, and (6) malicious conduct intending to intimidate Global from pursuing its civil remedies.

{¶ 11} The case was subsequently referred to mediation. When mediation proved unsuccessful, the court resumed trial preparations. On July 8, 2013, the Fourtounises filed a motion for order of bond related to the July 2012 order of possession, approximately one year after the order was issued and several months

---

[1] The letter agreement is not a subject of this appeal.

after Global's identical motion had been withdrawn. On July 19, 2013, Stamatopoulos filed an answer to the Fourtounises' amended complaint, asserting duress as an affirmative defense.

{¶ 12} The case proceeded to a jury trial on February 12, 2014. At the close of Stamatopoulos's case, the Appellees moved for a directed verdict on all counts of his complaint. The court granted the motion as to the claims of alter ego, breach of the asset purchase agreement, conversion, unjust enrichment, and trespass to chattel, leaving only Stamatopoulos's claim of fraudulent inducement.

{¶ 13} At the close of Appellees' case, Stamatopoulos moved for a directed verdict on Mark's claim of partnership dissolution, the Fourtounises' claim of wrongful attachment, and all claims for violation of civil rights under color of state law and malicious conduct. The motion was unopposed and granted as to the Fourtounises' claim of wrongful attachment and otherwise denied.

{¶ 14} With the agreement of all parties, the court instructed the jury to first consider Stamatopoulos' duress defense to the settlement agreement. It further instructed the jury that if Stamatopoulos failed to establish duress by a preponderance of the evidence, the court would enforce the settlement agreement and note. The court also instructed the jury as to the Fourtounises' violation of civil rights under color of state law claim as follows:

> [The Fourtounises] claim that [Stamatopoulos,] acting under Ohio's prejudgment replevin statute, deprived them of their ownership interest in the [Super Sucker.] Any person in the United States has the right to recover damages when any other person who, under color of any state law, deprives him or her of any right, privilege or immunity,

secured or protected by the constitution or the laws of the United States. Constitutional requirements of due process apply to prejudgment attachment procedures whenever state officers act jointly with a private party in seizing a property in dispute.

Now, in this case, [Stamatopoulos] acted jointly with the Cuyahoga County Sheriff's Department in seizing the [Super Sucker]. An order allowing for prejudgment seizure of property is constitutional only if the order requires plaintiffs to furnish an appropriate bond to compensate the defendants in the event of a wrongful seizure.

[Stamatopoulos] did not post a bond to protect the [Fourtounises] prior to seizing the [Super Sucker]. The seizure was therefore unconstitutional.

If the settlement agreement is valid, [the Fourtounises] are entitled to be compensated for all losses proximately caused by the seizure of their property.

The court did not instruct the jury as to any of Appellees' claims for breach of the settlement agreement or note.

{¶ 15} On February 21, 2014, the jury returned a verdict. Verdict form No. 1 stated that the jury found "in favor of [the Fourtounises] upon their counterclaim against [Stamatopoulos] and [awarded] damages of $100,000." This verdict was consistent with the interrogatory No. 6, pursuant to which the jury found that the Fourtounises proved by a preponderance of the evidence that they were damaged by Stamatopoulos's seizure of the Super Sucker. Pursuant to their instructions, the jury completed two other interrogatories. According to interrogatory No. 1, the jury did not find that Stamatopoulos proved his affirmative defense of duress by clear and convincing evidence. According to interrogatory No. 7, the jury did not find that Global or Mark proved that it was damaged by Stamatopoulos's seizure of its trucks

and equipment by a preponderance of the evidence. No other interrogatories or verdict forms were filled out by the jury.

{¶ 16} On March 5, 2014, Appellees filed a "request for entry of judgments," requesting that the court schedule a hearing to determine the attorney fees recoverable by Mark, direct Stamatopoulos to deliver title to the Super Sucker to the Fourtounises, and direct Stamatopoulos to deliver title to certain other vehicles and equipment to Mark. On March 19, 2014, Stamatopoulos responded to this request, arguing that in light of the jury's general verdict and award of $100,000 to the Fourtounises, he had no further obligations to perform under the settlement agreement. Stamatopoulos also argued that the Fourtounises were not entitled to the Super Sucker because they are legally prohibited from seeking both judgment on a debt and possession of the collateral securing said debt.

{¶ 17} On April 3, 2014, the court issued the following journal entry:

> As a result of the jury's verdict finding that [Stamatopoulos] failed to prove duress in the signing of the settlement agreement and cognovit note, the parties are hereby ordered to comply with the terms of the settlement agreement, signed by the parties on or about March 30, 2012, within 30 days of the date of this journal entry. The court retains jurisdiction over all post-judgment motions. * * * Final. * * *

{¶ 18} On April 16, 2014, Global filed a motion for a new trial "on damages." On April 17, 2014, Appellees filed a "motion for entry of final appealable judgment." On May 1, 2014, the trial court issued another journal entry stating:

> Entry of 04/03/2014 is amended to include the following language: inasmuch as it was the clear intention of the parties, and the jury was advised, that in the event that [Stamatopoulos] did not prevail on [his] claim of duress in signing the settlement agreement, the Court would

enforce the settlement agreement. In addition, the jury returned a verdict in favor of [the Fourtounises] for $100,000. It is so ordered. Final.

On May 14, 2014, the trial court denied Global's motion for a new trial on damages and denied Appellees' motion for entry of a final appealable judgment as moot.

{¶ 19} On May 27, 2014, Appellees filed a notice of appeal from the trial court's May 14, 2014 journal entry. On June 4, 2014, Stamatopoulos filed a notice of cross-appeal. Appellees presented seven assignments of error, and Stamatopoulos presented five cross-assignments of error. This court dismissed the case for lack of a final, appealable order. *Stamatopoulos v. All Seasons Contr., Inc.*, 8th Dist. Cuyahoga No. 101439, 2015-Ohio-1141 ("*Stamatopoulos I*").

{¶ 20} On remand, the trial court issued an order on August 26, 2015, "supplementing" its prior entries of April 3, 2014, and May 1, 2014. The supplemental judgment entry stated, in relevant part:

> On February 21, 2015, the jury returned a verdict in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos ("Lightning Capital Holdings") and awarded damages in the amount of $100,000.00. The jury further found that Global Outdoor Solutions did not prove by a preponderance of the evidence that it was damaged by Evangelos Stamatopoulos by the seizure of its trucks and equipment. Additionally, the jury found that Evangelos Stamatopoulos did not prove by clear and convincing evidence the affirmative defense of duress in signing the Cognovit Note and Settlement Agreement.
>
> All parties prepared and agreed to the jury instructions, jury interrogatories and verdict forms that were submitted to the jury. Any claims not addressed by the agreed-to forms are dismissed with prejudice pursuant to Civ.R. 41(B)(1).

Pursuant to the agreed to jury instructions, the jury was instructed, "If you find that plaintiffs failed to establish the duress defense by clear and convincing evidence, the Court will order the parties to perform the obligations imposed by the Settlement Agreement and Note."

Therefore, based on the jury's verdict, this court hereby finds in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos and Lightning Capital Holdings in the amount of $100,000.00. Additionally, pursuant to the agreed to jury instructions, the parties are hereby ordered to comply with the Settlement Agreement and Cognovit Note attached hereto as Exhibit A and Exhibit B within 30 days of the date of this order.

{¶ 21} On September 4, 2015, Appellees filed a proposed order of specific performance. On September 8, 2015, Stamatopoulos filed a notice of his compliance with the trial court's order of specific performance, asserting that he gave appellants a tender payment of the $100,000 judgment, and also executed titles, possession, and keys for certain vehicles listed in exhibit B of the parties' settlement agreement that were still in his possession.

{¶ 22} On September 25, 2015, the parties appealed again. The Appellees presented six assignments of error for review, arguing among other things that the trial court erred in dismissing claims that were not submitted to the jury and failing to award attorney fees. Stamatopoulos presented five cross-assignments of error, challenging the jury verdict and alleging that the trial court made several errors involving jury instructions.

{¶ 23} On February 1, 2018, this court reversed and remanded the case. *Stamatopoulos II.* In part because the trial court's August 26, 2015 order added language referring to the Cognovit Note, this court instructed the trial court to clarify

the rights and responsibilities of the various parties, as well as the status of any unresolved claims.

{¶ 24} On remand, on September 12, 2018, the trial court issued the following journal entry:

> Pursuant to the Court of Appeals journal entry and opinion issued February 1, 2018, this court was ordered to further explain its final entry of judgment issued August 26, 2015. Therefore, this court further finds that the $100,000 awarded by the jury in favor of Nikolas and Marika Fourtounis and against Evangelos Stamatopoulos relates to damages for wrongful attachment and seizure of the Super Sucker. Separate and apart from the jury's award of $100,000, due to the lack of finding of duress, the parties are also ordered to comply with both the Settlement Agreement and Cognovit note. Absence of reference to the Cognovit note in previous entries was in error.
>
> This court further finds that Nikolas and Marika Fourtounis have requested specific performance with regard to the Settlement Agreement and Cognovit note.
>
> It is ordered that within 14 days of the journalization of this judgment Evangelos Stamatopoulos shall endorse over the title to the 2004 Volvo Vacuum Truck, VIN #4V5KC96F54N36214 to Nikolas and Marika Fourtounis, trustees of the Nikolas and Marika Fourtounis Living Trust, and deliver the title to their counsel John Manos. In the event Evangelos Stamatopoulos fails to deliver the title properly endorsed for transfer the clerk of courts is ordered to cancel the existing title to the Volvo Vacuum Truck and issue a new title in the name of Nikolas and Marika Fourtounis, Trustees of the Nikolas and Marika Fourtounis Living Trust.
>
> It is ordered that within 14 days of the journalization of this judgment Evangelos Stamatopoulos shall return the 2004 Volvo Vacuum Truck VIN #4V5KC96F54N36214 to 5000 Van Epps Road, Brooklyn Heights, Ohio from where it was wrongfully seized in the same condition it was when the seizure occurred. All sets of keys are to be delivered with the truck.
>
> It is ordered that within 14 days of the journalization of this judgment Evangelos Stamatopoulos shall endorse over the title to all the trucks and trailers identified on the attached Exhibit XXX to Global Outdoor

Solutions, LLC and deliver the titles to its counsel John Manos. In the event Evangelos Stamatopoulos fails to deliver the titles properly endorsed for transfer the clerk of courts is ordered to cancel the existing titles for all vehicles and trailers listed on the attached Exhibit XXX and issue new titles in the name of Global Outdoor Solutions.

It is ordered that within 14 days of the journalization of this judgment Evangelos Stamatopoulos shall return the trucks and trailers identified in the attached exhibit XXX as being "seized by Stamatopoulos" to 5000 Van Epps Road, Brooklyn Heights, Ohio from where they were wrongfully seized in the same condition they were in when the seizure occurred. All sets of keys are to be delivered with the trucks.

The court retains jurisdiction over this matter to enforce the settlement agreement and Cognovit note.

Costs to Evangelos Stamatopoulos.

Final.

{¶ 25} Stamatopoulos initiated the instant appeal, raising the following assignments of error for our review:

I. The trial court erred as a matter of law in holding and then instructing the jury that seizure of property pursuant to a valid order of possession issued in the replevin action was unconstitutional, and it was plain error to decide this dispositive issue via a ruling on an evidentiary motion in limine.

II. The trial court erred as a matter of law in instructing the jury that defendants were entitled to damages for the seizure of property belonging to plaintiffs and loss of use of one piece of the property pledged as collateral.

III. The trial court abused its discretion by entering a money judgment in favor of Nikolas and Marika Fourtounis and then ordering specific performance.

IV. The trial court erred as a matter of law by directing a verdict in favor of appellants on Mr. Stamatopoulos' conversion claim for relief.

V. The verdict in favor of Nikolas and Marika Fourtounis is against the manifest weight of the evidence and was based in part upon plain error as a matter of law in admitting incompetent testimony as to the "possible" rental value of the Super Sucker by a witness who was neither the owner of the property or qualified as an expert witness.

{¶ 26} Appellees filed a cross-appeal, presenting the following cross-assignments of error for our review:

I. The trial court erred in failing to award Appellees the attorney fees incurred to enforce the settlement agreement.

II. The trial court erred in failing to award Appellees attorney fees when an unconstitutional seizure of their property was established at trial.

III. The trial court erred in denying Global's motion for new trial on damages.

## Law and Analysis

{¶ 27} As an initial matter, we note that our analysis in this appeal has been restricted by the parties' own pleadings and arguments, several of the trial court's decisions, and the relevant case law. As a result, we are mindful that the possibility of crafting an outcome that both adheres to the law and satisfies any or all of the parties is slim.

## I. Jury Instructions on Replevin Order of Possession

{¶ 28} In Stamatopoulos's first assignment of error, he argues that the trial court erred as a matter of law when it instructed the jury that seizure of property pursuant to an order of possession issued in the replevin action was unconstitutional. He further argues that it was plain error for the court to decide this dispositive issue via a ruling on a motion in limine.

{¶ 29} In response, Appellees offer an extensive discussion of Ohio's replevin statute, R.C. 2737.01 et seq., as well as the interaction of their claims with 42 U.S. 1983 ("Section 1983"). Appellees argue that R.C. 2737.10 requires that the court issue a bond prior to issuing a valid order of possession, and that in the absence of such a bond, the order of possession was unconstitutional.

{¶ 30} This issue initially came up at trial related to a motion in limine filed by the Appellees. Counsel for the Appellees sought a preliminary instruction from the court to the jury, at the outset of trial, that the order of possession was unconstitutional. The court heard arguments from both sides before ultimately concluding that while counsel for Appellees would not be precluded from arguing that the order was unconstitutional during opening statements, the court would not address the issue prior to its issuance of jury instructions.

{¶ 31} Once both sides had presented their cases to the jury, the issue was discussed again, this time in the context of jury instructions. Although Stamatopoulos's trial counsel conceded that the court should have ordered a bond prior to issuing the order of possession, counsel objected to a jury instruction characterizing the order as unconstitutional. The court considered this argument before ultimately overruling this objection and instructing the jury that Stamatopoulos had unconstitutionally seized the Fourtounises' property.

{¶ 32} Before we address the substance of the jury instructions, it is necessary to examine the context in which the court instructed the jury on this issue. Of the claims in the Fourtounises' amended answer and counterclaims, only one was

submitted to the jury: "violation of civil rights under color of law." Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.

To prevail on their Section 1983 claim, the Fourtounises were required to show "that (1) a person, (2) acting under color of state law, (3) deprived [them] of a federal right." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 20 (8th Dist.), citing *Berger v. Mayfield Hts.*, 265 F.3d 399, 405 (6th Cir.2001). After our review of the record and the relevant law, we conclude that the Appellees had no actionable Section 1983 claim against Stamatopoulos, and therefore, this claim should not have been submitted to the jury as a matter of law.

{¶ 33} In the instant case, the Fourtounises attempted to bring a Section 1983 claim against Stamatopoulos based on their claims that the replevin statute was misused and abused where Stamatopoulos filed an allegedly baseless motion and the trial court did not require Stamatopoulos to post a bond. The Fourtounises' claim does not attribute any violation because of a state rule, but rather contends that Stamatopoulos misused and failed to comply with the rule. Further, the Fourtounises are not challenging the constitutionality of Ohio's replevin statute. Rather, they are arguing that Stamatopoulos abused or violated the statute. In light of this distinction, we find the case law cited by the Fourtounises insufficient to

support their Section 1983 claim. Additionally, we are compelled to acknowledge that this court has previously held that the Fourtounises had no actionable Section 1983 claim related to the very same order of possession in a separate action. *Fourtounis v. Verginis*, 8th Dist. Cuyahoga No. 102025, 2015-Ohio-2518, ¶ 16.[2] In affirming the trial court's dismissal of the Fourtounises' Section 1983 claim in that case, this court held because the Fourtounises were not attributing any violation of their civil rights to a state rule, but rather asserting that the rule was misused or not complied with, they failed to state a cause of action under Section 1983. *Id.* at ¶ 14. Although that case involved a different defendant, we are mindful that the alleged violation complained of by the Fourtounises was nearly identical.

{¶ 34} Because we conclude, as a matter of law, that Appellees' Section 1983 claims should not have been submitted to the jury, any arguments regarding the contents of the jury instructions on this claim are moot. Therefore, we vacate the jury verdict and $100,000 judgment in favor of the Fourtounises, because the judgment was based upon the Fourtounises' Section 1983 claim. In light of this conclusion, Stamatopoulos's second, third, and fifth assignments of error are moot.

## II. Directed Verdict on Stamatopoulos's Conversion Claim

{¶ 35} In his fourth assignment of error, Stamatopoulos argues that the trial court erred in granting Appellees' motion for a directed verdict on his conversion

---

[2] Separate from the underlying action, Appellees filed a complaint against Theologis Verginis ("Verginis"), Stamatopoulos's initial attorney in these proceedings. Appellees brought a Section 1983 claim against Verginis related to his role in filing the replevin motion for possession of property that is at issue in the instant case. This court affirmed the trial court's dismissal of that claim.

claim because he presented sufficient evidence at trial going to all of the elements of that claim.

{¶ 36} Appellate courts apply a de novo standard of review in evaluating the grant or denial of a motion for directed verdict. *Zappola v. Rock Capital Sound Corp.*, 8th Dist. Cuyahoga No. 100055, 2014-Ohio-2261, ¶ 40, citing *United States Bank v. Amir*, 8th Dist. Cuyahoga No. 97438, 2012-Ohio-2772, citing *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14. Pursuant to Civ.R. 50(A)(4), a trial court properly grants a motion for directed verdict where, after construing the evidence most strongly in favor of the party against whom the motion is made, it finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.

{¶ 37} Count 4 of Stamatopoulos's complaint alleged conversion; specifically, he alleged that the Appellees exercised unlawful dominion and control over certain property he had purchased pursuant to the asset purchase agreement. Conversion is "the wrongful control or exercise of dominion over the property belonging to another consistent with or in denial of the rights of the owner." *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994), citing *Bench Billboard Co. v. Columbus*, 63 Ohio App.3d 421, 579 N.E.2d 240 (10th Dist.1989). A party alleging conversion must establish (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) the possessor refused to deliver the

property to its rightful owner. *Pointe at Gateway Condo. Owner's Assn. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 64, citing *Tabar* at 427-428.

{¶ 38} Stamatopoulos argued at trial that he purchased assets free and clear of any liens or encumbrances pursuant to an asset purchase agreement. Subsequent to the execution of that agreement, the parties executed a settlement agreement, pursuant to which Stamatopoulos agreed to transfer title to some of the purchased assets to Mark. Stamatopoulos also agreed to vacate the Van Epps yard, where he had been maintaining a personal office and keeping some of the purchased assets. Stamatopoulos presented evidence at trial that when he sent an agent, Tony Savaidis ("Savaidis") to the Van Epps yard to retrieve his property, Mark and his brother prevented Savaidis from entering the property. At trial, the parties disagreed as to whether there was an adequate demand for the return of the property and subsequent refusal to that demand to survive a motion for directed verdict.

{¶ 39} While

> "a demand for the return of personal property is not necessarily a prerequisite in a conversion action, a demand and refusal is necessary where the person alleged to have converted the property has rightfully obtained possession thereof and, therefore, cannot be found to have converted the property unless he either fails to restore it upon demand or by some other act of his creation unlawfully exercises dominion over the property."

*Kavalec v. Ohio Express, Inc.*, 2016-Ohio-5925, 71 N.E.3d 660, ¶ 31 (8th Dist.), quoting *Drakoules v. Dairy Queen of Whitehall, Inc.*, 10th Dist. Franklin Nos. 76AP-961 and 77AP-157, 1977 Ohio App. LEXIS 7412 (Aug. 9, 1977). Therefore, a demand

was necessary here because Stamatopoulos had voluntarily left his allegedly converted property at the Van Epps yard.

{¶ 40} Appellees acknowledge that Stamatopoulos made a demand for the property remaining at the Van Epps yard in a letter sent from his counsel to Appellees. However, they assert that rather than refusing to give the property to Stamatopoulos, the Fourtounises offered to arrange a meeting to complete the exchange of property, but such a meeting never took place and Stamatopoulos proceeded with filing the replevin action several days later. Evidence was presented to this effect at trial, and Stamatopoulos offers nothing in response to this. Because it does not appear that Stamatopoulos presented sufficient evidence of a demand and refusal, the trial court properly granted Appellees' motion for directed verdict on his conversion claim. Therefore, Stamatopoulos's fourth assignment of error is overruled.

### III. Attorney Fees

{¶ 41} In Appellees' first and second cross-assignments of error, they assert that the trial court erred by failing to award them attorney fees. In their first assignment of error, they argue that attorney fees are compensable damages when incurred as a result of a settlement agreement being violated. They also argue that all parties had agreed that the trial court would determine what attorney fees the prevailing party could recover. We disagree.

{¶ 42} The decision to award attorney fees should not be reversed absent a showing that the court abused its discretion. *Bittner v. Tri-County Toyota, Inc.*, 58

Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 43} As an initial matter, we must reiterate that the trial court dismissed with prejudice all claims not submitted to the jury, including Appellees' claims for breach of the settlement agreement. Therefore, neither the court nor the jury determined that Stamatopoulos breached the settlement agreement. The jury did determine, pursuant to interrogatory No. 1, that Stamatopoulos did not sign the settlement agreement under duress. Therefore, the settlement agreement was deemed valid and enforceable. It does not follow, however, that Stamatopoulos breached the settlement agreement.

{¶ 44} Further, despite Appellees' argument on appeal that the trial court, and not the jury, would determine the issue of attorney fees, this is belied by the record. At the close of Stamatopoulos's case in chief, the parties assented on the record to the court determining the issue of attorney fees with no assistance from the jury. Subsequently, however, the interrogatories and verdict forms given to the jury clearly contemplated attorney fees. The interrogatories and verdict forms were reviewed by the parties and agreed to by all parties. Ultimately, the jury declined to award attorney fees to any party, and none of the Appellees' challenged the jury verdict on appeal.

{¶ 45} Interrogatory No. 5 asked if the jury awarded Stamatopoulos attorney fees on his fraudulent inducement claim; the jury properly declined to complete this

interrogatory because it declined to find that Stamatopoulos proved duress by clear and convincing evidence. Interrogatory No. 9 asked "if you awarded punitive damages do you find that Global Outdoor Solutions (Mark Fourtounis) should also be awarded attorney fees?" Because the jury declined to find that neither Global nor Mark proved by a preponderance of the evidence that they were damaged by the seizure of its property, the jury properly declined to complete this interrogatory. Verdict form No. 3 stated, "[w]e the jury having found in favor of Global Outdoor Solutions (Mark Fourtounis) upon its Counterclaim against Evangelos Stamatopoulos, also find that Global Outdoor Solutions (Mark Fourtounis) should/should not (circle one) recover it's [sic] attorney fees." Again, because the jury did not find in favor of Global or Mark, it did not complete this verdict form.

{¶ 46} The only verdict form the jury did complete, pursuant to its instructions from the court, was verdict form No. 1, which stated that the jury found in favor of the Fourtounises upon their Section 1983 counterclaim against Stamatopoulos and awarded damages in the amount of $100,000 in connection with that claim. Even if we had not vacated this verdict as a matter of law, it contains no reference to attorney fees. In light of the foregoing, we find no abuse of discretion where the trial court declined to award attorney fees to any of the Appellees. Therefore, Appellees' first cross-assignment of error is overruled, and their second cross-assignment of error is overruled as moot.

## IV. Global's Motion for a New Trial on Damages

{¶ 47} In their third cross-assignment of error, Appellees argue that the jury failed to award Global damages and, similarly, the court erred in denying Global's motion for a new trial on damages. In support of this argument, Appellees assert that Global was damaged as a result of the order of possession and subsequent seizure of their property. In light of the uncontroverted evidence, they claim, the wrongful seizure of their property is an established fact. Because the jury's failure to award damages is against the manifest weight of the evidence, Appellees argue that the court should have ordered a new trial on the issue of damages. We disagree.

{¶ 48} Pursuant to Civ.R. 59, the granting of a motion for a new trial rests within the sound discretion of the trial court. Therefore, "'where a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, the decision on a motion for a new trial may be reversed only upon a showing of abuse of discretion by the trial court.'" *Spisak v. Salvation Army*, 8th Dist. Cuyahoga No. 99633, 2013-Ohio-5429, ¶ 20, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus.

{¶ 49} For the reasons outlined above in our analysis of Stamatopoulos's first assignment of error, Appellees' Section 1983 claims should not have been submitted to the jury as a matter of law. Therefore, any argument on appeal that is based on these claims necessarily fails. Further, even if it was proper to submit these claims to the jury, the jury did not find in Global's favor on its Section 1983 claim. Generally, a new trial on damages alone is usually only proper when the issues of

liability and proximate cause are not contested. *Iames v. Murphy*, 106 Ohio App.3d 627, 633, 666 N.E.2d 1147 (1st Dist.1995), citing *Mast v. Doctor's Hosp. N.*, 46 Ohio St.2d 539, 350 N.E.2d 429 (1976); *Slivka v. C.W. Transp., Inc.*, 49 Ohio App.3d 79, 550 N.E.2d 196 (8th Dist.1988). In light of the foregoing, that cannot be said of the instant case. Therefore, Global is not entitled to a new trial on damages. Appellees' third cross-assignment of error is overruled.

{¶ 50} As a result of the foregoing, we vacate the judgment entered in favor of the Fourtounises against Stamatopoulos on the Section 1983 claim. Further, in light of both the absence of any finding by the trial court or jury of any breach of the settlement agreement and the absence of any vacation of the replevin order of possession, we vacate the portion of the trial court's September 12, 2018 order instructing Stamatopoulos to turn over title and possession of the Super Sucker to the Fourtounises. Similarly, we vacate the portion of the trial court's September 12, 2018 order instructing Stamatopoulos to return property that he seized from Van Epps. The remainder of the trial court's September 12, 2018 journal entry, ordering the parties to comply with the settlement agreement, remains in effect, binding the parties to the respective contractual terms to which they agreed before the start of the underlying litigation.

{¶ 51} Judgment affirmed in part, and vacated in part.

It is ordered that appellees/cross-appellants and appellants/cross-appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR